LA PORTE *v.* MENACON.

1. Vendor and Purchaser—Land Contracts — Interpretation — Land Conveyed—Navigable Waters—Shore.

In view of an agreement by vendors in contracts for the sale of land describing the eastern boundary thereof as the "westerly shore of Lake Erie," to release one or more acres on the payment of a stipulated sum, "no single acre, however, to have more than 80 feet of lake frontage," the parties themselves placed their own interpretation upon the meaning of the words "westerly shore," and it cannot be consistently claimed by vendors that they reserved the shore and water rights.

2. Navigable Waters—"Shore" Defined—Water's Edge.

Although, correctly speaking, the word "shore" applies only to the land adjacent to the sea or other tidal waters, and is the space or ground over which the tide ebbs and flows, being bounded by the high and low water marks, as applied to the Great Lakes, it means the water's edge at its lowest mark, and, therefore, a grant to the shore of Lake Erie means to the water's edge at its lowest mark.

Appeal from Wayne; Goff (John H.), J. Submitted October 27, 1922. (Docket No. 45.) Decided December 5, 1922.

Bill by Anna LaPorte and another against Stephen Menacon and others to quiet title to land. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Woodruff & Woodruff* and *Frank W. Atkinson,* for plaintiffs.

*Prentis,* Mulford, *Pugh & Fitch,* for defendants.

McDonald, J. This is a bill to quiet title to certain

On the question of title between high and low water mark, see note in 45 L. R. A. 227.

On ownership of the bed of lakes and ponds, see notes in 18 L. R. A. 695; L. R. A. 1916C, 150.

land situated in the township of Brownstown, Wayne county, Michigan. The suit developed into a contest between the plaintiffs and Ralph Ainsworth and James A. Hurst, who were allowed to intervene as purchasers of the land under contracts which were then in the process of performance. The land consists of two parcels bordering on Lake Erie. Plaintiffs, who are sisters, derived their title through the estate of their father. They sold to Ainsworth and Hurst on contracts for a consideration of $10,000 a parcel. The contract from Mrs. Miller described her portion as containing 55 acres, and that from Mrs. LaPorte as containing from 45 to 50 acres. An examination of the abstract showed that there were some outstanding interests that had not been conveyed, and to perfect the title a bill was filed in the Wayne circuit court. While this proceeding was pending, Ainsworth and Hurst had the property surveyed, which showed a less acreage than that specified in the contracts. They asked the plaintiffs for a corresponding reduction in the purchase price. The reduction was agreed upon and new contracts entered into in which the acreage was specified according to the survey. In these contracts the eastern boundary of the land is given as the "westerly shore of Lake Erie." The plaintiffs say that this description takes the defendants to the shore of the lake and no farther; that the shore and land adjoining it on the east still belong to plaintiffs and was intended to be reserved by them. It is the title to this shore and adjoining land that plaintiffs desire to quiet by these proceedings. The defendants Ainsworth and Hurst say that the land claimed to have been reserved by the plaintiffs is under the waters of the lake; that if it does not belong to defendants by purchase, it belongs to the State of Michigan; that the description in their contracts includes all riparian rights and nothing was intended to be excepted.

The circuit judge took this view of it and on the close of the proofs dismissed the bill. The plaintiffs have appealed.

The question involved is the respective rights of the parties under these contracts. It is one of construction depending on the true intent of the parties, the surrounding circumstances and the oral testimony as far as that may be properly considered. Under an allegation of fraud, all the negotiations leading up to the contracts and merging in them were admitted in evidence. An examination of the evidence clearly leads to the conclusion that the plaintiffs intended to convey to Ainsworth and Hurst all of the land owned by them bordering on Lake Erie, including the water rights appurtenant thereto. The defendants bought the property for summer homes. The chief inducement of the purchase was the water frontage. The first contracts described the eastern boundary as Lake Erie. Counsel for plaintiffs concede that this description included the land, shore and all rights in the water adjacent thereto. And the plaintiffs testified that in the first contracts they reserved nothing. These contracts were canceled and new ones entered into, and in these new contracts, which are those here involved, is found a provision which it seems to me is very significant as to the question of intention to reserve the lake frontage. The provision is as follows:

"On further payment of $1,000, first party agrees to release from this contract, from time to time, one or more acres, in case of sale, on payment to first party at the rate of $500 per acre on condition that there is no default in any of the terms of this contract. No single acre, however, to have more than 80 feet of lake frontage."

In view of this reference in the contracts to lake frontage and the absence of any express reservation,

it cannot be consistently claimed that it was the intention of the plaintiffs to reserve the shore and water rights. It also shows the interpretation which the parties themselves placed upon the descriptive words used in fixing the eastern boundary. It shows what they meant by "westerly shore." But apart from this we think the word shore has a well understood meaning, and that a grant to the shore of Lake Erie means to the water's edge at its lowest mark.

Correctly speaking, the word "shore" applies only to the land adjacent to the sea or other tidal waters; it is the space or ground over which the tide ebbs and flows and is bounded by the high and low water mark. Our Great Lakes are not tidal waters. What, then, is meant by the shore of a lake unaffected by the tides? It is the land adjacent to the water, but how far from the water's edge does it begin? In the absence of any banks or other highlands to mark the boundary, the only definite line it has is the water's edge.

"The word 'shore' is strictly applicable only to the space between ordinary high and low water mark on a tidal river, sea or lake; but it is sometimes loosely used with reference to fresh water rivers, either as synonymous with the bank, or as denoting that portion of the bank which touches the margin of the stream at low water." 1 Kinney Irrigation & Water Rights (2d Ed.), § 305.

"While always a question of construction depending on the true intent of the parties as derived from a consideration of the whole instrument, specific calls in a description of the boundaries of land to the edge, bank or shore of a watercourse, pond or lake, will, as a rule, be construed to limit the grant or conveyance to the water's edge. 9 C. J. pp. 193, 194; citing *Stover* v. *Lovoia,* 8 Ont. W. R. 398, where it is held:

"Along the shore of a non-tidal river or of a navigable inland lake, is now well understood to mean along the edge of the water at its lowest mark, both

in this country and the United States.    That may be called the American use of the word 'shore,' which in England is reserved for the ocean and has there a more limited meaning."

A grant to Ainsworth and Hurst carries to the water's edge, and therefore includes the shore with all riparian rights.    This was the extent of the plaintiffs' ownership.    *Ainsworth* v. *Hunting & Fishing Club*, 159 Mich. 61.

We have carefully considered all other questions presented by counsel, but, in view of this disposition of the case, we do not deem it necessary to discuss them.

The decree dismissing the bill is affirmed, with costs to the defendants.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.    MOORE, J., did not sit.