PEOPLE, *ex rel.* DIRECTOR OF CONSERVATION,
*v.* BROEDELL.

1. NAVIGABLE WATERS—GREAT LAKES—PLATS OF RIPARIAN LANDS—WATER LEVEL.

   The level of the water at the date of platting a subdivision including riparian lands near Great Lakes is not impressive on the question of ownership of lands in the Great Lakes which defendant filled at a time when the water level was low.

2. INJUNCTION—DE MINIMIS NON CURAT LEX—GREAT LAKES—SUBMERGED LANDS—FILL.

   The doctrine *de minimis non curat lex* does not apply so as to require dismissal of bill by State to enjoin an earth fill or other improvement of lands claimed to be submerged lands lying lakeward of water's edge of a Great Lake, since the applicable law is State-wide and public rights that could be affected amount to considerably more than a trifling matter.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–5]  56 Am Jur, Waters §§ 52, 451 *et seq.*
   Title to beds of natural lakes and ponds.  23 ALR 757, 112 ALR 1108.
[2]  28 Am Jur, Injunctions §§ 21, 24 *et seq.*
[6]  3 Am Jur, Appeal and Error §§ 1211, 1215.

3. NAVIGABLE WATERS—GREAT LAKES—TITLE OF SUBMERGED LANDS—
TRUSTS.

  The title of the State to submerged lands in the Great Lakes is
    impressed with a trust for the benefit of the public and the
    State has a duty to protect the trust and not surrender the
    rights of the people thereto.

4. SAME—GREAT LAKES—LOW WATER—FILL.

  Fact that defendant, in State's suit to enjoin earth fill or other im-
    provement of land claimed to be submerged land of the Great
    Lakes belonging to the State in its trust capacity, who had filled
    the land on the land side of the water's edge at a period of low
    water, failed to make out a case of estoppel, even when ac-
    companied by fact that other property owners had done
    likewise.

5. PUBLIC LANDS — LAND PATENTS — TRANSFER OF TITLE — GREAT
LAKES—STATEHOOD.

  Land, including submerged land under the Great Lakes at time
    of patent to private parties by the United States prior to State-
    hood, would pass to the patentee and his transferees rather
    than in trust to the State when it was admitted to the Union.

6. SAME—LAND PATENT—RECORD—REMAND.

  Question of whether particular submerged land involved was in-
    cluded in patent given to private parties prior to Statehood, a
    question involving possible consequences to many titles other
    than one involved herein, which was pleaded and the subject of
    some proof, is remanded for additional proof and finding by
    trial court, where record presented is meager.

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted November 29, 1960. (Docket No. 96, Calendar
No. 47,671.) Decided December 28, 1961.

Bill by the People of the State of Michigan, on rela-
tion of the director of the department of conserva-
tion, filed February 10, 1956, against Peter G. Broe-
dell and others to enjoin as trespass defendants'
earth fill on submerged lands of Lake St. Clair. De-
cree for plaintiff. Defendants appeal. Decree set
aside and cause remanded for additional testimony
as to whether property was within description of
United States government land patent.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Nicholas V. Olds* and *Jerome Maslowski,* Assistant Attorneys General, for plaintiff.

*John H. Yoe* and *Frank C. Lawson,* for defendants.

*Amicus Curiae:*

*Anthony G. Jeffries,* as a property owner.

DETHMERS, C. J.     This suit was brought by the State to enjoin defendants from making an earth fill or any improvement upon lots claimed to be owned by them, located on the west shore of Lake St. Clair and described as lots 36 and 37 of Lake St. Clair Gardens Subdivision of part of Private Claim 623 in the city of St. Clair Shores, Macomb county, Michigan. From decree for plaintiff granting the injunction and relief prayed, defendants appeal.

Plaintiff alleged in its bill of complaint that the lots form a part of the bottom of Lake St. Clair, are submerged lands lying lakeward of the water's edge of said lake and are the property of the State of Michigan, held in trust by it for the use and benefit of the people, and that defendants, in making the fill and improvements thereon, are trespassers.

Defendant Peter G. Broedell, hereinafter called the defendant, in his answer, says he is the owner of the lots, admits that they are on the lake front, but denies that they are submerged, form part of the lake bottom or belong to the State.

It is plaintiff's position that the lots were submerged lands in 1837 when Michigan was admitted into the Union, and thereupon became the property of the State. Accordingly, its reliance is on 2 so-called submerged land acts, PA 1899, No 171 (CL 1948, § 317.291 *et seq.* [Stat Ann 1958 Rev § 13.1121

*et seq.*]), dedicating unpatented submerged lands to public use, declaring persons locating thereon to be trespassers and providing for the disposition and control of unpatented swamp lands, and also PA 1955, No 247 (CLS 1956, §§ 322.701–322.709 [Stat Ann 1958 Rev §§ 13.700(1)–13.700(10)]), authorizing the State department of conservation to grant, convey or lease certain unpatented submerged lake bottom and made land in the Great Lakes and to sell artificially filled lands for not less than 30% of the value of the land.

The proofs show a high degree of fluctuation in the water levels of the lake throughout the years and the seasons and months within those years. It is plaintiff's contention that during most of the history for which records of water levels of the Great Lakes have been kept the lots were under water and that they were so at the time the plat of Lake St. Clair Gardens Subdivision was made and recorded in 1924. Plaintiff alleged and adduced proofs to show that in February of 1956 an ice jam in its inlet, the St. Clair River, caused a temporary lowering of the level of the lake, permitting the lots to be exposed above water and that defendant seized upon this opportunity to make the fill for the purpose of preventing a return of the water over them and thus to capture a portion of the lake bottom and convert it into dry land and property useful for building purposes. Defendant presented proofs to show that the lots were not submerged at the time the plat was recorded and at other times before and after that date. Level of the water at the date of platting does not impress us as particularly important on the question of ownership.

Defendant urges that the filling in of the lots was of such trifling importance to the State as to require the application of the doctrine "*de minimis non curat lex.*" The length of shore line involved here may well

be considered minute compared to the total of Michigan's Great Lakes shore lines. The opportunities for fishing, fish and bird and plant life propagation, development and preservation dependent on maintenance of the area here involved in its natural state may be insignificant compared to the total in similar areas in the State available for those purposes. Application of that doctrine, however, to the lots in question may involve making it equally so elsewhere. In total consequence, the State's trust interests of the kind mentioned and public rights could be affected to an extent amounting to considerably more than a trifling matter. We do not deem the doctrine applicable here.

Defendant also urges estoppel against the State by reason of the alleged fact that the fill was made on lands west of the water's edge at the time when made and that other property owners had not been prevented from making like fills at about the same time. The title of the State to submerged lands in the Great Lakes is impressed with a trust for the benefit of the public. The State has a duty to protect that trust and may not surrender the rights of the people thereto. *State* v. *Venice of America Land Co.,* 160 Mich 680; *Nedtweg* v. *Wallace,* 237 Mich 14. No case for estoppel against the discharge of that State duty is made by the record before us.

The record is replete with maps, charts, plats, pictures, and other exhibits, all of which have been carefully examined, bearing on water levels and the submerged or other condition of the lots from time to time through the years and decades. These have given rise to questions as to whether the trust ownership of the State should be held to extend to the all-time high-water mark on record, the mean high-water mark, the mean level, the mean-low level, or the lowest water mark. In holding to the theory that the State holds certain submerged lands in trust for pub-

lic navigation, fishing, hunting et cetera, this Court has referred to the low-water mark as the boundary thereof. See *Lincoln* v. *Davis,* 53 Mich 375 (51 Am Rep 116). See, also, *LaPorte* v. *Menacon,* 220 Mich 684, for the low-water-mark theory. For language seemingly favorable to the high-water-mark theory, however, see *State* v. *Venice of America Land Co.,* 160 Mich 680; *Collins* v. *Gerhardt,* 237 Mich 38. Plaintiff says that in administering the submerged land acts, above mentioned, it follows the "philosophy" which it says is found in *Hilt* v. *Weber,* 252 Mich 198 (71 ALR 1238), of "a movable freehold", that is to say, that the dividing line between the State's and the riparian owners' land follows the water's edge or shore line at whatever level it may happen to be from time to time.

We think, however, that decision in this case may be controlled by another factor. We refer to defendant's claim that his title to lots 36 and 37 traces to a United States land patent dated June 1, 1811, before Michigan had been admitted as a State of the Union, and that, therefore, the State acquired no title thereto, in trust for the people or otherwise, upon being admitted to the Union.

If lots 36 and 37 were within the confines of Private Claim 623 as patented to defendant's predecessors in title, the heirs of James Abbott, on June 1, 1811, no title thereto passed from the United States to the State of Michigan upon its admission into the Union in 1837, even if submerged land at the time, because then it no longer belonged to the United States but to the Abbott heirs or their successors in title. In apparent recognition of this the legislature, in enacting the cited submerged land acts, expressly made them applicable only to "unpatented" lands. See *Knight* v. *The United States Land Association,* 142 US 161 ([*Knight* v. *United Land Association*] 12 S Ct 258, 35 L ed 974). See, also, *Beard* v. *Federy,* 3

Wall (70 US) 478 (18 L ed 88). If the lots were within the boundaries of the patented lands, plaintiff's bill should be dismissed and decree entered for defendant.

Plaintiff says the patent defense was not pleaded nor urged upon the court below, but was raised by defendant for the first time in his brief on appeal here and that, therefore, it ought not to be considered by this Court now. We think that, particularly because of the possible consequences to many titles other than that here involved, it should be considered and that it is properly before us under the pleadings, proofs and questions raised on appeal. Plaintiff's bill alleged ownership of the lots in the State as part of the lake bottom. Defendant's answer denied ownership in the State and claimed it for himself. The abstract of title was introduced into evidence without objection, showing the recording of the patent, the land description it contained, and, as well, that of the subsequently platted subdivision containing lots 36 and 37. This established, at least, and it is conceded that the subdivision is within the north, south and west lines of the patented area, leaving only the question whether the easterly boundary of the subdivision and of the lots is west of the easterly boundary of the patented area. A defendant's witness testified that the lands so patented extended easterly into the lake for 1,300 feet beyond the easterly line of defendant's lots as platted. Reference was made to this in the argument of defendant's counsel before the trial court, with citation to the case of *State* v. *Venice of America Land Co.*, 160 Mich 680, as authority, by analogy, that the State's ownership would end at the easterly edge of the lands patented. It is true that this appears to have escaped plaintiff so that no answer was made thereto in its oral argument before the trial court. We think, however, that this further injected the question into the case. After ap-

peal here, by order of this Court, defendant was permitted to amend his answer to show the patent and the description it contained and also the plat and its description. Inasmuch, however, as there is but a meager record as to whether the lots are within the description contained in the patent and a question of great public importance is involved, touching others than the parties hereto, and the patent matter and its legally controlling consequences were not strongly or pointedly urged below by defendant and perhaps not considered by plaintiff or the trial court, we conclude that plaintiff's motion should be granted to remand the case for taking further proofs and the making of a finding by the trial court on the question whether the lots in question were within the description of the patent.

Decree is set aside and the case remanded for the purposes stated and subsequent entry of decree accordingly in the trial court.

CARR, KELLY, BLACK, EDWARDS, and SOURIS, JJ., concurred.

KAVANAGH, J., did not sit.

OTIS M. SMITH, J., took no part in the decision of this case.