## OLIPHANT v. FRAZHO.

### STATE v. BEECH.

1. ESTOPPEL—EQUITY—STATES.

> The State may be estopped by its acts, conduct, silence, and acquiescence where the claim of the State has no foundation in equity, justice, or good conscience.

2. STATES — PLATS — CONVEYANCES — CLAIM — ESTOPPEL — FILLED LANDS.

> State action by its officers and agents in joining plaintiffs' predecessor as a proprietor in the execution of a plat which covered 90 lots, some of which were located at least in part on submerged land that had been filled lakeward from the patent line, and approval of the plat by the auditor general, thus showing the State and plaintiffs' predecessor to be the owners of the entire subdivision, and subsequent deed from the State land office board to plaintiffs' predecessor of the entire 90 lots is sufficient to wipe out any notice by the records that the lakeward side of the fill of submerged lands could not be included in the conveyance, and estopped the State from asserting any claim to the filled land lakeward from the patent line after 17 years of acquiescence (CL 1948, §§ 211.359, 560-.13, 560.38).

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and T. G. Kavanagh and McGregor, JJ., reversing Macomb, Deneweth (George R.), J. Submitted January 10, 1968 (Calendar No. 9, Docket No. 51,669.) Decided May 5, 1969.

5 Mich App 319, reversed.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 28 Am Jur 2d, Estoppel and Waiver § 123.

Complaint by William H. Oliphant and Gertrude K. Oliphant against Rose Frazho and others to enjoin the dredging of a canal and for damages. The State of Michigan intervened as party defendant and cross-plaintiff against Thomas C. Beech, Blanche Beech, Vance Ciuchna, Virginia Ciuchna, Edward Garbarino, and Ann Garbarino to assert its claim to certain land. Judgment held State was estopped from asserting its claim. The State appealed to the Court of Appeals. Reversed. Plaintiffs appeal. Reversed, and circuit court judgment affirmed.

*Frederick M. Maddock (Frank I. Kennedy,* of counsel), for plaintiffs and cross-defendants.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Nicholas V. Olds, Jerome Maslowski,* and *Esther Newton,* Assistant Attorneys General, for the State.

DETHMERS, J. This action now involves a controversy between plaintiffs and the State of Michigan, as intervening defendant, concerning rights to property which once was part of the submerged bottom, since filled, of Lake St. Clair in Macomb county, Michigan. Although it did so at one time, the State no longer makes claim with respect to that portion of the fill lying landward of the patent line. That leaves the dispute relating solely to the filled area lakeward of the patent line.

Plaintiffs Oliphant claim title to Lot 33, Ardmore Park Subdivision, a part of which lot lies within the boundaries of a patent granted to a private party by the United States government on November 2, 1832, and a part lying lakeward thereof. After mesne conveyances title to a portion of the patented land

was conveyed by deed, on May 6, 1911, to one Emil A. Nelson, which parcel thereafter became Lot No. 5 of Assessor's Plat No. 21. This lot ultimately became a part of Ardmore Park Subdivision. In 1932 Nelson requested and received from the United States war department a permit to fill a portion of the lake bed extending into the lake about 1,150 feet easterly and adjacent to said Lot No. 5. He proceeded forthwith to make a fill accordingly about 865 feet into the lake. In 1941 Nelson had lost title to Lot No. 5 for failure to pay taxes and the auditor general deeded it to the State of Michigan. In 1943 Nelson applied for and received a land contract for its repurchase from the State land office board. Later, in that year, Nelson and the State joined in executing and recording a plat of Ardmore Park, a 90-lot subdivision of said Lot No. 5 of Assessor's Plat No. 21. The plat was approved by the Michigan auditor general before the recording. After that, in 1943, the State land office board conveyed to Nelson, by deed, all of the 90 lots of Ardmore Park Subdivision. The easterly or lakeward line of the mentioned patent runs through this subdivision, with 40 of the 90 lots and parts of plaintiffs Oliphants' Lot No. 33 and of Lots Nos. 32, 59, and 60, belonging to other plaintiffs later becoming parties hereto, lying lakeward and parts thereof landward of that patent line.

After the State's conveyance to Nelson, he, in turn, conveyed and plaintiffs trace title to their lots to him. Since then, sewer, water mains and street paving were installed, special assessments therefor and regular taxes were levied on the lots, including those on the fill lakeward of the patent line, and paid by plaintiffs. Their homes and those of the other lot owners were built thereon.

This action began as a dispute between plaintiffs Oliphant and adjacent property owners about the

dredging of a canal over or next to their lots. Ultimately, that contest was settled, but while the action was still pending the State applied for and was granted permission to intervene to protect the public trust and submerged lands involved under the provisions of CL 1948, § 14.101 (Stat Ann § 3.211) and it filed a cross-bill of complaint accordingly.

The State claims title to all the lots lakeward of the patent line in Ardmore Park Subdivision and says it holds them in trust for the public under PA 1899, No 171, as amended (CL 1948, §§ 317.291– 317.297 [Stat Ann 1967 Rev §§ 13.1121–13.1127]). The State prays that the occupancy by plaintiffs be restrained as a trespass or that they be required to proceed under the so-called submerged lands act, PA 1955, No 247 (MCLA §§ 322.701–322.715 [Stat Ann 1967 Rev §§ 13.700(1)–13.700(15)]), to purchase same from the State at prices determined by the conservation commission. At trial the State valued the 40 lakeward lots at $68,625, and its appraiser set the prices on individual lots at from $1,500 to $1,750.

In their brief plaintiffs say that the consternation in some 40 households may well be pictured when confronted with this attack by the State upon their titles, and that their reaction may equally well be imagined as having been, in laymen's language:

"The State deeded our lots 17 years ago! How can they *renege* on that deed now?"

"Why didn't the State stop Nelson, back in 1933, from filling the lake bottom, if he was violating the law?"

"Isn't this claim *outlawed,* after all these years?"

"How come we've had to pay taxes and assessments for many years, if we don't own our property?"

Plaintiffs' reliance, particularly, is on the doctrine of estoppel against the State. The acts of the State

which they urge as the basis for such estoppel are the following: (1) The State's granting a land contract to Emil Nelson covering Lot 5 of Assessor's Plat No. 21 and subsequently joining with Nelson in executing and recording a plat of Ardmore Park Subdivision containing lots which were in said Lot 5 and also on the fill lying lakeward of it and of the eastern patent line; (2) the approval of the plat by the auditor general as having been made and offered for filing by the owners of the subdivision, namely, the State and Nelson, thus, in effect, certifying Nelson as an owner; and (3) execution and delivery by the State of a deed to Nelson describing and conveying all of the 90 lots of Ardmore Park Subivision, including those located on the fill.

Plaintiffs contend that these State acts, plus the fact that it is not Nelson who now claims and owns the lots but plaintiffs who are subsequent innocent purchasers for value, who have improved the lots, built homes and paid taxes thereon for years, will result in a great and unjust loss to plaintiffs if the State be permitted to prevail in its claim, and that these combine to constitute grounds for estoppel.

In response to plaintiffs' theory of estoppel the State's position is that the State cannot be estopped by unlawful, unauthorized acts of any of its officials, boards or agents, nor is the State bound thereby, citing *Sittler* v. *Board of Control* (1952) 333 Mich 681. The State then quotes from *Lawrence* v. *American Surety Company of New York* (1933), 264 Mich 516 (88 ALR 535) as follows:

"To estop the State, the acts or conduct of an officer must be within the scope of his authority."

The State then stresses that title to the unpatented, submerged bottom lands of Lake St. Clair came to the State upon its admission to the Union, that it was and is held by the State in trust for the people

for navigation, fishing, et cetera, and the State has a duty to protect that trust and may not surrender those rights of the people thereto, nor can those rights of the people be affected except by an act of the legislature, citing *State* v. *Venice of America Land Co.* (1910), 160 Mich 680; *People* v. *Silberwood* (1896), 110 Mich 103; *State* v. *Lake St. Clair Fishing & Shooting Club* (1901), 127 Mich 580; and *Nedtweg* v. *Wallace* (1927), 237 Mich 14.

In this action the trial court upheld the plaintiffs' position and ordered dismissal of the State's cross-bill of complaint. On appeal to the Court of Appeals, it reversed the trial court and remanded the cause for determination of the amount due the State under the submerged lands act of 1955, as amended, for the filled land in dispute.

From the holding and order of the Court of Appeals, on plaintiffs' application, leave to appeal to this Court was granted. 379 Mich 755.

There can be no doubt that a controlling question as to the claimed estoppel is whether the State acts, by its officers and agents, were of a kind so authorized as to be binding on the State. Cases relied on by the State in this connection differ from the case at bar in that here the auditor general was not only authorized by law to approve plats for recording, but it was his duty so to approve or disapprove (CL 1948, § 560.38 [Stat Ann § 26.468]) and approve if he found it conformed with the requirements of the plat act. Section 13 of that act (CL 1948, § 560.13 [Stat Ann 1953 Rev § 26.443]) provides that the plat shall be signed by the person holding the title. The approval by the auditor general here indicated his opinon that the State and Nelson were the owners of the 90 lots of Ardmore Park Subdivision as to part of which the State had given a contract but had not yet deeded to Nelson. As for sale by the State land office board of lots to Nelson, the author-

ity relied on by plaintiffs existed under PA 1937, No 155, § 9, as amended by PA 1941, No 363 (CL 1948, § 211.359 [Stat Ann 1960 Rev § 7.959]).

In its opinion the trial court summarized the case and analyzed and applied the law applicable in language we thoroughly approve, as follows:

"The court finds in this case that the State of Michigan has by three specific acts put itself in a position which makes its position in this case completely unconscionable. First of all, it joined as a proprietor in the plat of the Ardmore Park Subdivision at a time when it knew, or should have known, full well that its land contract vendee (Nelson) was in the process of filling beyond the patent line. Second, despite this fact, it joined as a proprietor in the platting of all of the lots from 1 through 90, Ardmore Park Subdivision. Not only the State of Michigan joined in this plat as a proprietor but the auditor general of the State of Michigan attested to its validity. The court is cognizant of the opinion of Justice [T. M.] KAVANAGH at the time he was attorney general of the State, OAG 1955, p 68, No. 1972, in which he clearly laid down the duties of the auditor general with regard to the platting of properties, and Third, were the plat not enough, the State land office then conveyed by deed to Emil Nelson not only that property lying within the patent line but rather all of the lots shown on the plat of Ardmore Park Subdivision (1 through 90). Can the State now be heard to deny that their officers were acting within the scope of their authority; that their actions were merely that of a rubber stamp? This court thinks not.

"It is to be noted that we are not here dealing with the rights of Emil Nelson. If we were, obviously different conclusions would be reached. Rather, we are dealing with the rights of innocent third persons, persons who had been assured that their titles were marketable and who had never heard of submerged

lands prior to the adoption of the submerged lands act of 1956 [1955?].

"For almost 17 years the State of Michigan did nothing. It sat on its hands while homes were being built, streets paved, water and sewers installed, taxes collected by the county and indirectly by the State, and then suddenly it announced that it owned the land claiming it in trust for the public and demanded in this case some $65,000.00, which has been aptly characterized by the plaintiff as ransom money. The State proceeds upon the proposition that it owns a trust interest in the premises for the use and benefit of the public, said trust interest embracing such uses as hunting, fishing, fowling and navigation. It, however, is not challenging the title of the landowners for the purpose of preserving these interests. Obviously, these lands have long since, and by acquiescence of the State, lost their value for such trust purposes. The State purports rather to convey off those very rights for the purpose of enriching the central [general?] fund of the State. In the court's opinion, there is nothing here but the desire of the State to get into the real estate business, not to protect the trust interest of the public. In the court's opinion, the property owners are innocent parties who will suffer a great loss if the intervening State's position is allowed to stand.

"Their rights as innocent parties should not be any less because they have had the misfortune to be involved with an opponent who is a sovereign power. The principle which should guide the court has been very aptly and succinctly stated by Justice TALBOT SMITH in his dissenting opinion in the *Muskegon Case,* where he said:

" 'There is, in fact, a constructive fraud. Are we to assume that these considerations of the conscience have no application to the government? Do we live under a double standard of morality, whereby that which is an abomination when committed by the private citizen becomes good government if accomplished by an arm of the ruling power? The

mere suggestion is repellent.' *Consumers Power Co.* v. *County of Muskegon* (1956), 346 Mich 243.

"That the State as well as individuals may be estopped by its acts, conduct, silence, and acquiescence is established by a line of well adjudicated cases. *Hough* v. *Buchanan* (CC Iowa, 1886), 27 F 328; *United States* v. *Missouri, K. & T. R. Co.* (CC Kan, 1888), 37 F 68; *Attorney General, ex rel People,* v. *Ruggles* (1886), 59 Mich 123; *State* v. *Jackson L. & S. R. Co.* (CA 6, 1895), 69 F 116; *State* v. *Flint & Pere Marquette Railroad Company* (1891), 89 Mich 481; *Trustees of Internal Improvement Fund* v. *Claughton* (Fla, 1956), 86 So 2d 775.

"It follows that the State's cross-bill of complaint should be dismissed."

In its opinion the trial court cites two Michigan cases which are in point, namely, *Attorney General, ex rel. People,* v. *Ruggles* (1886), 59 Mich 123, and *State* v. *Flint & Pere Marquette R. Co.* (1891), 89 Mich 481. In these the doctrine of estoppel was allowed to apply against the State. As reason therefor this Court in the railroad case said:

"The claim of the State has no foundation in equity, justice, or good conscience. The maxim that 'where one of two parties, neither of whom has acted dishonestly, must suffer, he shall suffer who, by his own act, has occasioned the confidence and consequent injury of the other,' applies to the present case."

That the State, as well as individuals, may be estopped by its acts, conduct, silence, and acquiescence, is established by a line of well adjudicated cases as above pointed out by the trial judge. On the basis of the requirements of equity, justice, or good conscience, there is no support for the claim of the State whatsoever and, on the contrary, these require

a holding for plaintiffs, application of the doctrine of estoppel as against the State, and dismissal of its cross-bill of complaint.

Attacking plaintiffs' claims that they are in a better position than Nelson would have been because they were and are innocent purchasers, the State says that they were obligated to examine the records and are chargeable with knowledge of what these disclosed (*McKay* v. *Williams* [1887], 67 Mich 547), namely, that it was only Lot 5 of Assessor's Plat 21 that Nelson had lost for nonpayment of taxes and that this did not include the fill extending out over the lake bottom easterly therefrom and, hence, as to the latter, the State land office board did not, under PA 1937, No 155, as amended, have authority to sell or convey the same. Plaintiffs' answer, and we think it valid, is that, after the land contract but before the deed to Nelson, the State joined Nelson as proprietor in the execution of a plat of said Lot 5 which covered all of the 90 lots of Ardmore Subdivision, including those on the fill, the auditor general approved the plat thus showing the State and Nelson to be the owners of the entire subdivision, and the subsequent deed from the State land office board to Nelson contained a description of the lands conveyed as being the entire 90 lots of Ardmore Park Subdivision. We think, as did the trial court, that all of these factors combined to wipe out any notice by the records to plaintiffs that the fill could not be included in the conveyance and, in fact, gave assurance to plaintiffs, as innocent purchasers, that they might rely on these State representations and thus have confidence in the appearance of good title when they made their purchases without any notice or knowledge to the contrary.

The order of the Court of Appeals is reversed and the judgment of the circuit court dismissing the State's cross-bill of complaint, with prejudice, and

with costs to plaintiffs is affirmed.    Plaintiffs shall also have the costs of appeal.

T. E. BRENNAN, C. J., and KELLY, BLACK, and T. M. KAVANAGH, JJ., concurred.

ADAMS, J., did not sit.

T. G. KAVANAGH, J., took no part in the decision of this case.