PEOPLE *ex rel* DIRECTOR OF THE DEPARTMENT OF NATURAL
RESOURCES v MURRAY

1. NAVIGABLE WATERS—SUBMERGED LAND—CONVEYANCES—PATENTS.

   Submerged land on the water side of a meander line was not
   conveyed by a government patent because the government did
   not convey patents to entire sections where the section was cut
   off by navigable water, but rather conveyed only fractional
   parts of a section up to the meander line or at most to the
   water's edge.

2. NAVIGABLE WATERS—SUBMERGED LAND—STATES—PLATS—TITLE
   CLAIM—ESTOPPEL.

   The state is not estopped from claiming title to submerged land
   which a defendant planned to fill merely because the state had
   approved a subdivision plat which contained part of the land in
   question where the only reliance on the approved plat had been
   by the defendant to the extent of $2,500 which he paid for the
   plat, and where the relief sought by the state, to prevent
   defendant from filling the land, is consistent with the state's
   right to hold the land in trust for the public.

3. NAVIGABLE WATERS—SUBMERGED LAND—STATES—CLAIM—STAT-
   UTES—40-YEAR MARKETABLE TITLE.

   The state was not precluded from claiming title to submerged
   land despite a claim by a defendant that he and his heirs had
   held continuous title to the land for 40 years because provisions
   of the 40-year marketable title statute do not apply against the
   state, and title was in the state because title to lands beneath
   navigable water passed to the state upon admission to the
   Union (MCLA 565.104).

Appeal from St. Clair, Halford I. Streeter, J.
Submitted Division 2 May 13, 1974, at Lansing.
(Docket No. 17089.) Decided August 13, 1974.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 56 Am Jur, Waters §§ 462, 463.
[2, 3] 56 Am Jur, Waters §§ 453, 456, 469.

Complaint by the people of the State of Michigan on the relation of A. Gene Gazlay, Director of the Michigan Department of Natural Resources, against Peter A. Murray to enjoin the defendant from filling a parcel of submerged land and to require removal of two fences. Judgment for plaintiff. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Jerome Maslowski* and *Clive D. Gemmill,* Assistants Attorney General, for the people.

*William Murray,* for defendant.

Before: DANHOF, P. J., and T. M. BURNS and CARLAND,* JJ.

T. M. BURNS, J. This is an action instituted by the Department of Natural Resources in an attempt to enjoin the defendant, Peter Murray, from filling a parcel of submerged land located in or contiguous to Mallard Bay in St. Clair County, Michigan. Plaintiff also seeks an order requiring the defendant to remove two wooden fences that he has erected on the boundaries of the land in question.

Defendant asserts that the land in question is his property, and attempts to trace the title back to a land patent granted by President Benjamin Harrison. Conversely, plaintiff argues that the land is submerged below navigable water, is on the water side of the high-water mark, and that the land was not included in the patent. Plaintiff, therefore, contends that the land belongs to the people of the State of Michigan. Plaintiff also

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

argues that even if the land was included in the patent, the patent does not operate to take title to the land away from the people because the patent was not granted until after Michigan became a state. Finally plaintiff argues that defendant has not successfully traced his title from the patent.

The case went to trial on January 5 and February 9, 1973, in the St. Clair Circuit Court. The trial court, sitting without a jury, found that the patent covered neither Mallard Bay nor the land claimed by the defendant and that the land in question has always been submerged beneath navigable water and below the high-water mark. The trial court thus concluded that title to the land in question has never vested in any individual. The defendant appeals this decision as of right.

1. *Does the State of Michigan have title to all submerged land under a bay if the water is navigable and a United States patent to the land was not granted until after Michigan had already been admitted to statehood?*

The lower court made a finding of fact that the land in question was navigable. Since there was sufficient evidence presented to support that finding, we do not find the trial court's holding to be clearly erroneous, and proceed on the basis that the land in question was navigable.

Thus, unless the land in question was transferred by the Federal government by a patent prior to Michigan's admission to the Union, the land in question belongs to the people of the state, *Collins v Gerhardt,* 237 Mich 38, 46; 211 NW 115 (1926); *State v Venice of America Land Co,* 160 Mich 680, 701; 125 NW 770 (1910). However, if the land was patented by the United States to a private person before Michigan became a state, then the United States would have had no title to the property to

convey upon admission of Michigan to statehood and the title would thus remain in the patentee despite the fact that the patent conveyed lands under navigable water. See *Klais v Danowski,* 373 Mich 262, 271–272; 129 NW2d 414 (1964); *People ex rel Director of Conservation v Broedell,* 365 Mich 201, 206; 112 NW2d 517 (1961).

We find it unnecessary to consider the question of whether the patent was granted before or after Michigan became a state. Nor do we feel compelled to determine whether the rule that the patent relates back to the date of the original settlement applies to the case at bar. We need not decide these questions since we are of the opinion that the land in question was not covered by the land granted by the patent from the United States.

Defendant apparently traces his title back to a sale made by the United States of 477 acres of land in section 10, township 2, range 16 on October 29, 1818, to five individuals. The records of the United States Department of Interior, Bureau of Land Management, indicate that this land was patented on May 9, 1889. However, one of defendant's exhibits was a land patent from President Benjamin Harrison dated November 9, 1891, granting this land to the same five people. The patent states:

"[T]hat full payment has been made for the South Fractional half of Section ten in Township two North of Range Sixteen East of the Detroit District, (containing one hundred nineteen acres and thirty six hundredths of an acre. *[sic]* of the Lands directed to be sold at Detroit, Michigan by the Act of Congress, entitled 'An Act providing for the sale of the Lands of the United States, in the Territory northwest of the Ohio, and above the mouth of Kentucky River,' and of the acts amendatory of the same."

One Alfred McCann, of the Department of Natural Resources, Engineering Division, and an expert surveyor, testified on behalf of the plaintiff that the property in question was not part of the property granted in the patent. After indicating that he had surveyed the land in question and studied the relevant records, he testified that according to the patent, the "South Fractional Half of Section ten" conveyed by the patent is 119.36 acres, while in the southern half of a true section, which would be one square mile, there would be 320 acres. He further testified that the acreage in the southern half of section 10 up to the meander line is only 119 acres and that all of the land in the 119 acres is north of the land in dispute here. Mr. McCann's testimony thus implied that "South Fractional half" does not refer to the southernmost portion of section 10, but rather that since section 10 is cut off by the navigable water, "South Fractional half" refers only to the part of the southern half north of the water. Therefore, the patent, which conveyed about the same amount of land, had no intent to convey any land that was part of the water.

Based primarily on Mr. McCann's testimony and the exhibits presented to it, the lower court found that the patent did not cover the bay, any part of the river, or the land claimed by defendant. The court thus held that title to the land had never vested in any individual.

We agree with the lower court's conclusion that the land in question was not covered by the patent. We find support for our interpretation in *Hilt v Weber,* 252 Mich 198, 204–205; 233 NW 159 (1930), where the Court stated that "A patent from the government was intended to carry title to the water's edge". The Court, quoting from *St Paul &*

*P R Co v Schurmeier,* 74 US (7 Wall) 272, 286-287; 19 L Ed 74, 78 (1869), further stated:

"Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser."

Thus, it appears that when a section ran into navigable water, a "fractional portion" of the section up to the navigable water was conveyed. Assuming that there has been no great change in the surface of the land covered by water, the government would not normally convey underwater land by a patent. See also *Wilson v Hoffman,* 70 Mich 552, 557; 38 NW 558 (1888).

Therefore, since the government did not convey patents to entire sections where the section was cut off by navigable water, but rather conveyed only fractional parts of a section up to the meander line or at most to the water's edge, and since all of defendant's property was on the water side of the meander line, we conclude that the trial court's finding that the land in question was not conveyed by the patent was proper. It follows that the State of Michigan obtained title to this navigable water when it was admitted to statehood.

2. *Is the state estopped from claiming title to the land in question because it approved Supervisor's Plat Number 9 which contained part of the land in question?*

Relying on *Oliphant v Frazho,* 381 Mich 630; 167 NW2d 280 (1969), defendant contends that the state is estopped from claiming title to the land in question.

In *Oliphant,* the state and Mr. Nelson jointly executed and recorded a plat of Ardmore Park, a 90-lot subdivision. The plat was approved by the Michigan Auditor General, and the state land officer later conveyed all of the 90 lots in the subdivision to Nelson by deed. Relying on these conveyances, Nelson and his successors built homes on the lots and installed sewers, water mains, and paved streets.

Subsequently, the state, realizing that 40 of the lots and portions of several other lots were on land that had been navigable water which was filled in, sued claiming that it held the land lakeward of the patent line in trust for the public. The Supreme Court applied the doctrine of estoppel against the state and held that the state could not assert any claim to the filled land after 17 years of acquiescence.

We are of the opinion that the case at bar can be distinguished from *Oliphant* in several respects. First, the circumstances for applying the estoppel doctrine were much more compelling in the *Oliphant* case than they are in the present case. In the case at bar, the only reliance upon the supervisor's plat has been by defendant to the extent of $2,500 which he paid for the plat. In *Oliphant,* homes were built, sewers were dug, and streets were paved.

Furthermore, the state's involvement in *Oliphant* was much greater than in the case at bar. In the present case, the State Auditor General merely approved the supervisor's plat which had the land in question on it. In *Oliphant,* the Auditor General not only approved the plat, but himself joined in the platting of all the lots and actually conveyed these plats to Nelson by deed. The Supreme Court made it clear that "all" of

these facts combined to wipe out any notice that the subsequent land owners may have had. 381 Mich at 639.

Finally, the relief sought by the state in *Oliphant* was different from that sought in this case. In *Oliphant,* the state, while arguing that it had the right to hold the land in trust for the public, was simply seeking money damages from the owners. This demand for money damages was inconsistent with the state's argument that the land would be held in trust. In the case at bar, however, the state is seeking to prevent defendant from filling in the land. This remedy is consistent with holding the land in public trust.

We, therefore, conclude that *Oliphant* does not control or apply to the case at bar, and that the state was not estopped from claiming title to the land in question.

3. *Is plaintiff precluded from claiming title to the land in question because the defendant and his heirs have held continuous title to the land for over 40 years?*

As we indicated in our earlier discussion, the patent involved in this case did not transfer title to the land in question. Therefore, the title to this land passed to the State of Michigan upon its admission to the Union.

MCLA 565.104; MSA 26.1274 provides in pertinent part:

"This act shall not * * * be deemed to affect any right, title or interest in any land owned by the state of Michigan, or by any department, commission or political subdivision thereof."

The 40-year statute thus does not apply against the state, and defendant cannot claim title to the land in question under this statute.

Affirmed.

All concurred.