# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF PLAINFIELD,

      Plaintiff-Appellant,

v

DEPARTMENT OF NATURAL RESOURCES
AND ENVIRONMENT,

      Defendant-Appellee.

UNPUBLISHED
March 10, 2015

No. 316535
Kent Circuit Court
LC No. 09-008254-CZ

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Plaintiff Plainfield Charter Township appeals as of right the trial court order granting defendant Department of Natural Resources and Environment[1] summary disposition pursuant to MCR 2.116(C)(10). We reverse and remand for further proceedings.

## I. FACTS AND PROCEEDING BELOW

Before the mid-1990s, plaintiff used a lagoon on the banks of the Grand River to receive "water treatment residuals" (principally comprised of calcium carbonate and magnesium) from its water treatment plant. In 1987, plaintiff decided to use the Coit Avenue Gravel Pit (CAP) to receive the water treatment residuals from its water treatment plant. The CAP was approximately 30 acres in size in 1988 and is currently 35 to 38 acres in size. The CAP is closed off from other bodies of water and has no natural surface outlet to the Grand River or any other stream.

On October 20, 1987, plaintiff applied to the DNR for a permit to use the CAP to hold backwash water and water softening sludge from plaintiff's water treatment plant. On August 11, 1988, William Shaw of the Permits Section of the DNR sent plaintiff a letter stating that:

---

[1] Defendant is the successor state government agency to the Department of Natural Resources (DNR) and Department of Environmental Quality (DEQ).

-1-

The discharge of potable water treatment sludge from the Plainfield Township treatment plant into the adjacent [CAP] does not require a National Pollutant Discharge Elimination (NPDES) permit. *. . . This decision is based on our conclusion that the [CAP] is excluded as a "waters of the State" in the Part 4 Rules of the Water Resources Commission (WRC) because of its existing <u>use</u> as solely for wastewater conveyance, treatment, or control.* [Emphasis added.]

The standards established under Part 4 of the Michigan Administrative Rules governing water resources protection "are the minimum water quality requirements by which the surface waters of the state shall be managed." Mich Admin Code, R 323.1041. Under Mich Admin Code, R 323.1044(u), "drainage ways and ponds used solely for wastewater conveyance, treatment, or control" are exempted from being "surface waters of the state."

More than six years later, on January 7, 1994, the Michigan Department of Public Health issued plaintiff a permit to allow plaintiff to expand the CAP. Using that permit, plaintiff incorporated the CAP as its wastewater receptacle for a $10,000,000 expansion to its wastewater treatment plant.

On August 5, 2003, the DEQ sent plaintiff the results of its survey of plaintiff's water system. The DEQ concluded that the system was well operated and maintained. The survey did not mention any problem with the CAP. On August 11, 2005, the DEQ issued plaintiff a permit to construct a wash water drain between the CAP and the Grand River.

The instant case arises out of the notification sent by the DEQ to plaintiff on August 7, 2006 after a survey of plaintiff's water system. The DEQ advised plaintiff:

No National Pollutant Discharge Elimination System (NPDES) or Groundwater Discharge permit exists. The township was sent a letter from William Shaw of the DEQ on August 11, 1988 indicating the gravel pit is not a "Waters of the State" and an NPDES permit is not needed. However, construction of a new spillway in 2005 between the Grand River and the discharge pond could allow water from the pond to discharge back into the river. This would constitute an unlawful discharge. Therefore, the township must take the necessary steps to prevent this from happening. The township is also encouraged to evaluate alternatives to eventually eliminate the discharge to the pond.

On June 30, 2009, the DEQ sent plaintiff a letter indicating that the DEQ had determined that CAP was "surface waters of the state." The DEQ requested that plaintiff submit within 90 days of the letter a corrective action plan to provide an alternative means of wastewater disposal.

On August 4, 2009, plaintiff filed its initial complaint in the Kent Circuit Court and, on October 6, 2010, filed its first amended complaint which raised four counts. First, plaintiff asked for declaratory judgment that the waters of the CAP are not "waters of the state." Second, plaintiff argued that equitable estoppel should bar defendant from ruling that the CAP is "waters of the state." Third, plaintiff argued that collateral estoppel barred defendant from ruling that the

CAP is "waters of the state." Fourth, plaintiff argued that defendant's attempt to rule that the CAP is "waters of the state" constituted inverse condemnation.

On October 27, 2010, defendant moved the trial court to dismiss the second, third, and fourth counts in plaintiff's first amended complaint. Defendant based its motion on the argument that plaintiff was not legally entitled to the application of either equitable or collateral estoppel. On November 29, 2010, defendant filed a supplemental brief arguing that the Michigan Court of Claims was the proper forum for these claims and that, therefore, plaintiff's first amended complaint before the circuit court should be transferred to the Court of Claims. On December 2, 2010, plaintiff filed a complaint with the Court of Claims alleging the same causes of action as had been contained in counts two, three, and four of the amended circuit court complaint.

On January 16, 2011, plaintiff filed its second amended complaint in the circuit court case, in which it sought only declaratory judgment that the waters of the CAP are not "waters of the state."[2]

In fall 2012, each party filed a motion for summary disposition asking the circuit court to decide the declaratory matter in its favor. Defendant argued that the CAP was not a pond and not used solely for wastewater conveyance, treatment, or control because it was hydrogeologically connected by groundwater to the adjacent Grand River. Plaintiff argued that the CAP was not "waters of the state" because it was a "pond" and because the CAP was only used for wastewater conveyance. Plaintiff also argued that defendant should be estopped from defending the case on estoppel grounds, given the years in which defendant had advised plaintiff that the CAP was exempt.

Various affidavits were provided in support of the motions. Andrew Dykema, owner of the Coit Avenue Gravel Company, provided an affidavit stating that his company sold the CAP to plaintiff in July 2012, and that to his knowledge, the CAP had been used exclusively for wastewater conveyance and that his company had fenced in portions of the CAP and placed "no trespass" signs at the CAP. On November 8, 2012, plaintiff adopted an ordinance that prohibited the use of the CAP for anything other than wastewater conveyance, treatment, or control. Robert Vander Male, a licensed engineer with the Prein & Newhof engineering firm, provided an affidavit averring that the hydrogeological characteristics of the CAP were materially the same in 2012 as they were in March 1988. He further attested that water from the CAP either evaporated or was discharged into adjacent groundwater and that he was not aware of any uses of the CAP other than wastewater conveyance. Vander Male's affidavit also stated that plaintiff recently purchased the CAP from its previous owner for $880,000 and that plaintiff also spent approximately $100,000 in piping and related engineering costs in regard to the CAP. Vander Male stated that if defendant had not made its decision in 1988 that the CAP did not need an NPDES permit, plaintiff could have purchased another lagoon instead of the CAP to handle its

---

[2] On December 13, 2010, plaintiff's cases before the Kent Circuit Court and the Court of Claims were joined. The trial court heard both cases.

water treatment residuals. Using a second lagoon would have cost plaintiff between $1,000,000 and $1,100,000. Vander Male stated in his affidavit that because there was no longer land available for a second lagoon, if the CAP could no longer be used, plaintiff's best alternative would be to implement a mechanical system to handle its water treatment residuals at the cost of $7,000,000 in capital improvements and $260,000 per year in additional operational costs.

Brent Fisher, Environmental Engineer Specialist with the DEQ, provided an affidavit in which he stated that the CAP was "closed" because it had "no natural _surface level_ outlet to the Grand River or any other stream" but that the groundwaters of the CAP continually interchanged with the groundwaters of the surrounding area.[3]

On December 7, 2012, the trial court held a hearing to address the summary disposition motions before the court in the circuit court case and the Court of Claims case. On January 17, 2013, the circuit court granted summary disposition to defendant, concluding that the "waters in the CAP are 'waters of the state' as defined by MCL 323.3101(z)." The trial court explained that "[b]ecause the waters in the CAP are drawn from and interchange with the groundwater system which includes the Grand River, CAP is not a drainage way or pond used solely for wastewater conveyance, treatment, or control." The trial court therefore granted defendant's motion for summary disposition in the circuit court declaratory judgment action and denied plaintiff's summary disposition motion.

The trial court subsequently denied plaintiff's motions for reconsideration. Plaintiff appeals, seeking reversal of the trial court's grant of summary disposition in the circuit court case.

## II. ANALYSIS

The question before us is whether, for purposes of Mich Admin Code, R 323.1041, the CAP is or is not "waters of the state." The trial court held that it is and, based upon that conclusion, granted defendant's request for summary disposition. The grant or denial of summary disposition under MCR 2.116(C)(10) is reviewed de novo to determine if the moving party is entitled to judgment as a matter of law. _Maiden v Rozwood_, 461 Mich 109, 118; 597 NW2d 817 (1999). Under MCR 2.116(C)(10), summary disposition of all or part of a claim or defense may be granted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." Thus, in reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), we must "determine whether there exists a genuine issue of material fact on which reasonable minds could differ or whether the moving party is entitled to judgment as a matter of law." _Gibson v Neelis_, 227 Mich App 187, 190; 575 NW2d 313 (1997). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light

---

[3] The lagoon used prior to the CAP was not considered by defendant to be a "waters of the state" and defendant did not require an NPDES permit for the lagoon.

most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

MCL 324.3109 provides that:

> (1) A person shall not directly or indirectly discharge into the waters of the state a substance that is or may become injurious to any of the following:
>
> (a) To the public health, safety, or welfare.
>
> (b) To domestic, commercial, industrial, agricultural, recreational, or other uses that are being made or may be made of such waters.
>
> (c) To the value or utility of riparian lands.
>
> (d) To livestock, wild animals, birds, fish, aquatic life, or plants or to their growth or propagation.
>
> (e) To the value of fish and game.

MCL 324.3112(1) provides that "[a] person shall not discharge any waste or waste effluent into the waters of this state unless the person is in possession of a valid permit from the department." " 'Waters of the state' means groundwaters, lakes, rivers, and streams and all other watercourses and waters, including the Great Lakes, within the jurisdiction of this state." MCL 324.3101(z). In MCL 324.3103(1), the Legislature provided that defendant "shall protect and conserve the water resources of the state and shall have control of the pollution of surface or underground waters of the state and the Great Lakes, which are or may be affected by waste disposal of any person." Defendant was given authority by the Legislature to promulgate rules to carry out its duty to protect Michigan's water resources. MCL 324.3103(2).

Under Part 4 of the Michigan Administrative Rules governing water resources protection, defendant promulgated rules designed to

> establish water quality requirements applicable to the Great Lakes, the connecting waters, and all other surface waters of the state, to protect the public health and welfare, to enhance and maintain the quality of water, to protect the state's natural resources, and to serve the purposes of Public Law 92-500, as amended, 33 USC 1251 *et seq.*, Part 31, Water Resources Protection, 1994 PA 451, MCL 324.3101 to 324.3119, and the Great Lakes water quality agreement enacted November 22, 1978, and amended in 1987. [Mich Admin Code, R 323.1041.]

Under Mich Admin Code, R 323.1044(u), the

> "Surface waters of the state" means all of the following, *but does not include drainage ways and ponds used solely for wastewater conveyance, treatment, or control*:
>
> (*i*) The Great Lakes and their connecting waters.

-5-

(*ii*) All inland lakes.

(*iii*) Rivers.

(*iv*) Streams.

(*v*) Impoundments.

(*vi*) Open drains.

(*vii*) Wetlands.

(*viii*) Other surface bodies of water within the confines of the state. [Emphasis added.]

Thus, to qualify for the exemption created by this regulation, plaintiff must show that the

CAP is a pond used solely for wastewater conveyance, treatment, or control.

## A.  THE CAP'S "USE"

Plaintiff argues that under Mich Admin Code, R 323.1044(u), the CAP is used solely for wastewater conveyance, treatment, or control, and is therefore exempt from Part 4 of the Michigan Administrative Rules governing water resources protection.  Specifically, plaintiff argues that the term "used" denotes a use for human purposes.  In response, defendant argues that the CAP's naturally occurring interchange of water with the groundwater system surrounding the CAP is sufficient to constitute a "use," and that, therefore, the CAP is not used *solely* for wastewater conveyance, treatment, or control.  The trial court agreed with defendant that "use" includes non-human uses and concluded that CAP cannot fall within the exemption because it is "used" to move groundwater from one side to the other as part of the natural flow of groundwater.  We conclude that the trial court's view of the regulation is overbroad.  If the mere movement of groundwater through a pond constitutes a "use," then there is no pond that could qualify for the exemption unless it was artificially lined, a requirement clearly not contained within the text of the exemption.  Moreover, the township has enacted an ordinance barring any other use of the CAP other than wastewater conveyance, treatment, or control.

The rules of statutory construction also apply to the construction of administrative rules. *Great Wolf Lodge v Pub Serv Comm*, 489 Mich 27, 37; 799 NW2d 155 (2011).  When interpreting an administrative rule, we must ascertain and give effect to the intent of the drafter. *Romulus v Mich Dep't of Environmental Quality*, 260 Mich App 54, 65; 678 NW2d 444 (2003).  This is accomplished by reviewing the language of the administrative rule and giving plain ordinary meaning to unambiguous language. *Id*.

Who or what may use a drainage way or pond under Mich Admin Code, R 323.1044(u) is not defined in that rule or in related administrative rules.  *Random House Webster's College Dictionary* (1997), provides that "use" means "1. to employ for some purpose; put into service: *to use a knife*.  2. to avail oneself of; apply to one's own purpose; *to use the facilities*." Moreover, if the term "use" did not necessarily require human activity or purpose, it is difficult

to see how any pond could qualify. Even a pond with no obvious wildlife living on or near it is likely used by microorganisms. Provisions must be read in the context of their placement and purpose in the scheme of administrative rules. *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009). The purpose of this rule was to allow an exemption under certain defined circumstances, not to have no exemption at all. Accordingly, we conclude that the only "use" of the CAP is wastewater conveyance, treatment, or control and that this use is consistent with the CAP being exempt from being considered surface "waters of the state" under Mich Admin Code, R 323.1044(u).

Defendant argues that a failure to consider the passage of groundwater through the CAP as a "use" endangers the nearby Grand River and the surrounding groundwater that ultimately is a source of drinking water. Unquestionably, the nearby groundwater is "waters of the state." However, defendant does not assert that any seepage of the CAP contents into the groundwater constitutes a violation of any law. Moreover, the DNR has the authority to address groundwater discharge and require permitting. However, in 1991, the DNR issued a "Water Resources Commission Exemption for Public Water Treatment Plants" stating that "discharges of liquid water, from public water treatment plants to the ground or groundwater of the State, will not be required to have a groundwater discharge permit . . . [providing certain conditions exist]." Defendant does not direct us to any conditions required by the exemption that plaintiff has not met. If plaintiff's operation of the CAP does not comply with these conditions then it would appear that the exemption would not apply and defendant could exercise its authority to protect the groundwater.

However, the question before us is whether the discharge of clean water and the byproducts from the treatment plant into the CAP itself is improper. As noted, we agree with plaintiff that the CAP is being "used solely for wastewater conveyance, treatment or control."

B. WHETHER THE CAP IS A "POND"

In addition to its use solely for wastewater conveyance, treatment or control, in order to fall within the exemption to classification as "waters of the state," the CAP must be a "drainage way [or] pond." Plantiff asserts that it is a pond. Having concluded that the CAPS was not used solely for wastewater, the trial court did not reach this second issue. On remand, the trial court shall consider it as directed herein.

First, the trial court shall determine whether defendant should be estopped from arguing that the CAP is not a pond for purposes of the administrative rule. As outlined earlier, the DEQ's actions and communications over many years were consistent with, if not direct evidence of, a legal conclusion that the CAP qualified as a pond under the rule. Moreover, plaintiff has presented affidavits setting out, at least in part, the extent of its reliance on those communications to its detriment if it is now required to change the status quo.

Defendant appears to argue that the issue of equitable estoppel may not be considered in this case as estoppel was pled as a cause of action in the Court of Claims case and dismissed

there.[4]  However, regardless of the validity of estoppel as an independent cause of action in the Court of Claims case, in this case, it is a defensive doctrine.  Indeed, it has been said that "[e]quitable estoppel is not an independent cause of action, but instead a doctrine that may assist a party by precluding the opposing party from asserting or denying the existence of a particular fact." *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 140-141; 602 NW2d 390 (1999).  See also *Casey v Auto Owners Ins Co*, 273 Mich App 388, 399; 729 NW2d 277 (2006) (equitable estoppel "is not a cause of action unto itself; it is available only as a defense.").  And, equitable estoppel may be applied both to individuals and to the state of Michigan.  *Oliphant v State*, 381 Mich 630, 638; 167 NW2d 280 (1969) ("That the State as well as individuals may be estopped by its acts, conduct, silence and acquiescence is established by a line of well adjudicated cases.").

We also reject defendant's argument that the State may not be equitably estopped in the absence of "constructive fraud."  *Oliphant* does not *require* such a showing and we do not construe the repeated actions of state agencies over two decades in regard to the CAP as merely the erroneous or misunderstood actions of an individual state employee.  Moreover, the reliance is complete, the costs associated with it are extraordinary, and the circumstances have not changed.  Finally, we note that plaintiff does not seek to block defendant from exercising its discretion as to future construction permit applications, only to estop defendant from effectively revoking the permits it has already issued, during the useful life of the facilities.

> Equitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts. [*Conagra, Inc*, 237 Mich App at 141.]

Based on the record evidence presented by plaintiff, it has, at a minimum, demonstrated a prima facie case that each requirement of equitable estoppel is present in this case.  Accordingly, after providing an opportunity for defendant to offer factual evidence in rebuttal,[5] the trial court shall decide whether or not defendant is equitably estopped from now arguing to the court that the CAP is not a pond for purposes of the administrative rule.

In the event that defendant is able to offer evidence that outweighs plaintiff's factual showing as to estoppel, then the trial court must then determine whether the CAP is a pond for purposes of the regulation.  Unfortunately, the regulation does not define "pond."  Moreover, we find that the dictionary is of little, if any, assistance as it defines pond and lake in contrast to each

---

[4] Our understanding is that the Court of Claims case remains pending in the trial court as to the inverse condemnation claim.

[5] This is not an invitation for defendant to relitigate or reshape its legal argument concerning the application of estoppel.  Rather, it is to assure that defendant has had the opportunity to make its case against estoppel *factually* in the context of the three-part standard in *Conagra, Inc*, 237 Mich App at 141.

other. *Random House Webster's College Dictionary* (1997) defines "pond" as "a body of water smaller than a lake, sometimes artificially formed, as by damming a stream" and defines "lake" as "a body of fresh or salt water of considerable size, surrounded by land." By these definitions, a "pond" is a body of water, sometimes artificially formed, that is smaller than a body of water of considerable size that is surrounded by land. This vague definition does not lead us to conclude that the CAP is or is not a pond as a matter of law.

Thus, whether the CAP is a pond is a question of fact. The factfinder must consider the size and appearance of the CAP, the way in which it has been referred to, used, and described by the parties and others, comparisons to other bodies of water, and any other relevant evidence.

## III. CONCLUSION

We hold that for purposes of Mich Admin Code, R 323.1044(u), the CAP[6] is "used solely for wastewater conveyance, treatment, or control." Accordingly, we reverse the grant of summary disposition to defendant and remand to the circuit court which shall (a) determine whether, by the operation of equitable estoppel, defendant is barred from asserting that the CAP is not a pond, (b) if necessary, determine whether the CAP is a pond and, (3) conduct any other proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

---

[6] Our ruling is intended to apply solely to the CAP and we decline to issue a general ruling as to how Mich Admin Code, R 323.1044(u) is to be applied as to other bodies of water or in other circumstances.