BEULAH MISSIONARY BAPTIST CHURCH v SPANN

Docket No. 65871. Submitted July 14, 1983, at Detroit.—Decided
    February 7, 1984. Leave to appeal applied for.

The Beulah Missionary Baptist Church, through its officers,
    brought an action in Wayne Circuit Court seeking to enjoin the
    Reverend T. Cortez Spann, Jr., from serving as pastor of the
    church and to recover certain church assets from him. The
    action was brought as a result of a dispute among the church
    membership and Reverend Spann concerning, among other
    things, a mortgage arrangement which Reverend Spann had
    entered into with the National Bank of Detroit. The circuit
    court, Patrick J. Duggan, J., ordered a monitored election by
    the church membership to determine whether Reverend Spann
    should remain as pastor. Spann refused to cooperate in the
    preparation of membership lists for notification of the election
    and prevented his attorney from attending the election to help
    monitor it. When the election results were brought before the
    court Spann objected to the results and pointed out several
    alleged irregularities in the voter list. After adjusting the votes
    because of some errors, Reverend Spann was found to have lost
    the election. The court, Charles Kaufman, J., entered an order
    to the effect that Reverend Spann was no longer pastor of the
    church. Reverend Spann appealed, alleging that the trial court
    erred by refusing to admit evidence that some eligible voters
    were not allowed to vote and that some ineligible voters were
    allowed to vote. *Held:*

1. Reverend Spann had an obligation to cooperate in the
    preparations for the election. Having failed to participate in
    the compilation of what he knew would be a binding voter

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 5 Am Jur 2d, Appeal and Error § 545.
[2] 23 Am Jur 2d, Depositions and Discovery §§ 328, 353.
[3] 66 Am Jur 2d, Religious Societies §§ 31, 45.
[5] 20 Am Jur 2d, Courts § 95.
[6] 5 Am Jur 2d, Appeal and Error § 744.
[7] 4 Am Jur 2d, Appeal and Error § 50.
    5 Am Jur 2d, Appeal and Error § 856.

eligibility list, he is now estopped from challenging the consequences of his own inaction.

2. The court did correct certain discrepancies in the vote and relied upon an independent monitor's recommendations. The court did not abuse its discretion in refusing to take additional evidence on the accuracy of the voter list.

Affirmed.

H. R. GAGE, J., agreed that the court did not abuse its discretion in refusing the additional evidence. She would hold, however, that the circuit court exceeded its jurisdiction in ordering that Reverend Spann could no longer serve as pastor, because that is a question which is purely ecclesiastical. Judge GAGE notes that the jurisdictional issue was raised in an application for leave to appeal from an interlocutory order, which was denied, and that the denial of that application does not preclude appellate review of the issue in the subsequent appeal. She would modify the trial court's order to confine it to matters within the court's jurisdiction.

### OPINION OF THE COURT

1. APPEAL — ERROR — GROUNDS FOR APPEAL.

A party may not, by his inaction, harbor error to be used as grounds for appeal in the event he does not prevail at trial.

2. ESTOPPEL — ACQUIESCENCE OF PARTY.

A party who acquiesces in the results of a court-ordered discovery procedure by failing to participate in that procedure when he had a duty to do so may be estopped from challenging those results.

### PARTIAL CONCURRENCE AND PARTIAL DISSENT BY H. R. GAGE, J.

3. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — COURTS — JURISDICTION — ECCLESIASTICAL QUESTIONS.

*Courts may resolve questions concerning property rights in a dispute involving a religious organization but have no jurisdiction to resolve purely ecclesiastical questions.*

4. APPEAL — ISSUES NOT RAISED BY PARTIES.

*An appellate court will not ordinarily review questions not raised or briefed by the parties, but may properly consider fundamental questions relating to the court's jurisdiction or reviewing function even though not raised or briefed by the parties.*

5. COURTS — JURISDICTION — SUBJECT MATTER JURISDICTION.

*Subject matter jurisdiction is an absolute requirement for a*

judicial proceeding; such jurisdiction cannot be conferred on a court by consent, conduct or waiver, and may be questioned at any time.

6. Appeal — Law of the Case.

The doctrine of the law of the case requires that, when an appellate court has passed on legal questions and remanded the case for further proceedings, the legal questions thus resolved will not be resolved differently in a subsequent appeal in the same case while the facts remain materially the same.

7. Appeal — Interlocutory Order — Denial of Leave To Appeal — Law of the Case.

Denial of leave to appeal an interlocutory order is not the equivalent of affirmance of the order and does not preclude appellate review of the order in a subsequent appeal of the case.

*Hamilton & McDonald, P.C.* (by *Vanzetti M. Hamilton*), for plaintiff.

*Bell & Hudson, P.C.* (by *Seymour Floyd*), for defendant.

Before: J. H. Gillis, P.J., and Gribbs and H. R. Gage,* JJ.

Per Curiam. This appeal involves a church election. Reverend T. Cortez Spann, the defendant, was pastor of the Beulah Missionary Baptist Church in the City of Westland. A dispute arose at the church, and Reverend Spann's followers voted to remove certain deacons and a trustee from their positions as church officers. One of the removed deacons sponsored a meeting at which a vote was taken to remove Reverend Spann as pastor. The church, through its officers, sued in Wayne County Circuit Court to enjoin Reverend Spann from occupying the church pulpit and to recover church assets from him. During the show cause hearing,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the court ordered a monitored election to determine whether Reverend Spann would remain as pastor of the church.

To prepare for the election, the parties, a court-appointed independent monitor, and two church employees were to compile a list of church members and mail notices of election to them. Reverend Spann did not cooperate, however, and the final list was compiled without his participation. As a result, some names which appeared on preliminary lists were not included on the final list because those compiling the list were unable to find corresponding mailing addresses.

The election was held on June 12, 1982. Again, Reverend Spann failed to participate by keeping his attorney from attending the election to help monitor it. The unadjusted vote was 149 to 146 to dismiss Reverend Spann.

On June 21, 1982, the parties and the independent monitor met in circuit court to report the election results. At this hearing Reverend Spann raised preliminary objections to the election process. According to the defendant, 16 people were refused ballots because their names did not appear on the verification list at the polling place. They filed affidavits of church membership. Additionally, 14 voters were alleged to be ineligible. Although their names appeared on the voter lists, it was argued that they were members of other churches.

Four of the 16 omitted members were on the court-approved eligibility list but were inadvertently deleted from the list at the polling place. The court ruled them eligible. They had not been allowed to vote on June 12, on either the regular or sealed ballots. The defendant alleged that four more church members were on a preliminary list but were deleted from the final list because their

addresses were unknown. The independent monitor's records did not show that these four came to the polling place to vote. Thus, the court found them ineligible.

The independent monitor presented an additional five uncounted sealed votes. Three names were clearly on the list; two were on the list but had been crossed out. There was no dispute about counting the three votes. As to the remaining two, the court determined they were eligible to vote because they appeared on the list. The judge indicated that he was not going to try to determine what various markings on the final list were intended to mean. The five sealed ballots were counted on the record; all were votes to dismiss Reverend Spann. The adjusted election results now stood at 154 to 146, against Reverend Spann.

Because the four omitted voters would not be able to alter the result of the election, the parties stipulated for the purposes of the hearing that the four voters would cast ballots in Reverend Spann's favor. The court ruled, then, that the church membership had voted 154 to 150 to dismiss Reverend Spann as pastor.

Reverend Spann raised three objections to the results at the hearing. First, he wished to prove that 14 voters were ineligible. He sought to show that they were members of other churches, not of Beulah Missionary Baptist Church. The court ruled that it would not take additional evidence on the eligibility of those whose names appeared on the eligibility list. Second, Reverend Spann alleged that some people were turned away from the polling place and that the independent monitor's records erroneously showed that they had not appeared. The court ruled it would rely on the monitor's records as accurate. Third, the defendant

alleged that an eligible voter who identified herself by her middle and last names was not allowed to vote. The eligibility list referred to her by first and last names. The independent monitor concluded that he could not verify her identity, and the two church employees assisting in the election agreed. The court accepted the monitor's determination.

On appeal, Reverend Spann argues that the circuit court abused its discretion by refusing to hear evidence that 12 eligible voters were not allowed to vote and 11 ineligible voters did vote.[1] Ours is an evidentiary issue. The propriety of a court-ordered church election is not before us, and we offer no opinion on that question.[2] Additionally, we must note that the law of political elections is not applicable here. The rights involved in political elections are preserved by the constitution. See Const 1963, art 2. The procedure for electing pastors at Beulah Missionary Baptist Church is more contractual in nature. 66 Am Jur 2d, Religious Societies, § 29, pp 780-781. The members of the church have agreed to certain elections bylaws and to use the Hiscox Guide for Baptist Churches, known as the Hiscox Manual.

The legal question is whether the court abused its discretion by refusing to allow additional evi-

---

[1] The 12 "eligibles" are those remaining of 16 after 4 votes were allowed. The record and briefs do not disclose how the list of 14 "ineligibles" mentioned at the June 21 hearing has been reduced to 11 in the Court of Appeals. In letters from pastors of other churches, 15 names are listed as members of the other churches. Of these, four are marked by asterisks as "challenged voters". The source or meaning of these notations is not clear from the record.

[2] Prior to the election Reverend Spann petitioned this Court for leave to appeal and moved for a stay of circuit court proceedings, arguing that the court lacked jurisdiction over ecclesiastical matters not involving property rights. A panel of this Court voted 2 to 1 to deny the application for leave and the motion for stay. *Beulah Missionary Baptist Church v Spann* (Docket No. 64903, unpublished order of June 11, 1982). The propriety of an election has not been briefed in this appeal.

dence on the eligibility of voters. We hold that it did not abuse its discretion.

The parties had a continuing obligation to cooperate in the election preparations. Reverend Spann breached this obligation by failing to participate in compiling what he knew would be a binding voter eligibility list. He now challenges the uncertainty of the voter list, yet it was Reverend Spann's defiance which created the uncertainty. He cannot sit back and harbor error to be used as grounds for appeal in the event he lost the election. *Cf. People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969) (failure to raise timely motion in criminal trial). The court properly ordered the parties to compile a list of eligible voters not only to assure a fair election, but also to assure that any eligibility questions be resolved before the election was held. In an emotionally charged atmosphere involving strongly held religious beliefs, the court wished to bring finality to the dispute so the church could return to some semblance of normal operations.[3] Of course, finality is not an end in itself, and the court cannot violate the parties' rights for the sake of finality. But, consistent with all the court's concerns, a party certainly can be estopped from challenging the consequences of his own inaction. By his inaction at a time when action was expected, Reverend Spann has acquiesced in the eligibility list. This serves as an estoppel. *Cf. Thompson v Enz,* 385 Mich 103, 108; 188 NW2d 579 (1971); *Oliphant v Frazho,* 381 Mich 630, 638; 167 NW2d 280 (1969).

We note that the church and the court did not take unfair advantage of Reverend Spann's acqui-

---

[3] Because of factional disputes before the court's involvement, police officers were forced to break up fights and remove people from membership meetings and Sunday services. Security guards were hired to patrol the polling place during the court-ordered election.

escence. The court corrected certain discrepancies in the eligibility list, as shown by its careful consideration and allowance of some disputed votes. We hold that the court did not abuse its discretion when it relied on the independent monitor's recommendations and refused to take additional evidence on the accuracy of the voter list.

Affirmed.

H. R. GAGE, J. *(concurring in part and dissenting in part)*. I agree with the majority that the circuit court did not abuse its discretion by refusing to allow additional evidence on the eligibility of voters. However, I would hold that part of the circuit court's order exceeded the court's jurisdiction.

Courts have jurisdiction to resolve questions concerning property rights but do not have jurisdiction to resolve purely ecclesiastical questions. *Berry v Bruce,* 317 Mich 490; 27 NW2d 67 (1947); *White v Mount Beulah Baptist Church,* 319 Mich 392; 29 NW2d 774 (1947); *United Armenian Brethren Evangelical Church v Kazanjian,* 320 Mich 214; 30 NW2d 842 (1948); *Michigan Congregational Conference v United Church of Stanton,* 330 Mich 561; 48 NW2d 108 (1951); *First Protestant Reformed Church v DeWolf,* 344 Mich 624; 75 NW2d 19 (1956). The circuit court here acted within its jurisdiction when it determined who had the right to control the church's property, but it exceeded its jurisdiction when it purported to determine who would perform the religious functions of the office of pastor. The latter question is purely ecclesiastical.

An appellate court ordinarily will not review questions not raised or briefed by the parties, but an exception to this rule exists for fundamental questions relating to the court's jurisdiction or

reviewing function. *Nicpon v Nicpon,* 9 Mich App 373, 376; 157 NW2d 464 (1968). Subject-matter jurisdiction is an absolute requirement for a judicial proceeding and cannot be conferred by consent, conduct, or waiver. *Kita v Matuszak,* 21 Mich App 421; 175 NW2d 551 (1970); *Bandfield v Wood,* 104 Mich App 279; 304 NW2d 551 (1981). The question of subject-matter jurisdiction may be reached at any time. *Warner v Noble,* 286 Mich 654; 282 NW 855 (1938).

The majority points out that the question of jurisdiction was raised in an interlocutory application for leave to appeal to this Court. The order denying leave stated that leave was denied "for lack of merit in the grounds presented". The doctrine of "law of the case" requires that, when an appellate court has passed on legal questions and remanded the case for further proceedings, the legal questions thus resolved will not be resolved differently in a subsequent appeal in the same case while the facts remain materially the same. *CAF Investment Co v Saginaw Twp,* 410 Mich 428, 454-455; 302 NW2d 164 (1981); *Allen v Michigan Bell Telephone Co,* 61 Mich App 62, 65-66; 232 NW2d 302 (1975). In other contexts, the phrase "lack of merit in the grounds presented" has been held to constitute a resolution of legal questions binding on a subsequent panel under the doctrine of "law of the case". *People v Wiley,* 112 Mich App 344, 346; 315 NW2d 540 (1981); *People v Douglas,* 122 Mich App 526, 530; 332 NW2d 521 (1983). However, denial of leave to appeal an interlocutory order is not the equivalent of affirmance of the order and does not preclude appellate review of the order in a subsequent appeal. *Great Lakes Realty Corp v Peters,* 336 Mich 325, 328-329; 57 NW2d 901 (1953). In the context of the order at

issue here, the phrase "lack of merit in the grounds presented" refers merely to the grounds presented for immediate appellate review of the interlocutory order; no resolution of the substantive issue presented is expressed. This panel can and should consider the jurisdictional issue.

I would affirm the circuit court's decision, but modify it to confine it to matters within the court's jurisdiction.