**GATES LEARJET CORPORATION,**
Plaintiff–Appellant,

v.

**DUNCAN AVIATION,**
Defendant–Appellee.

No. 85–1269.

United States Court of Appeals,
Tenth Circuit.

June 30, 1988.

Stephen P. Kenney, Lord, Bissell & Brook, Chicago, Ill. (Hugh C. Griffin, Lord, Bissell & Brook, Chicago, Ill., and Richard C. Hite and Scott J. Gunderson, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., were also on the brief), for plaintiff-appellant.

Windell G. Snow, Curfman, Harris, Stallings & Snow, Wichita, Kan. (Craig A. Kreiser, Curfman, Harris, Stallings & Snow, Wichita, Kan., was also on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, and SEYMOUR and BALDOCK, Circuit Judges.

HOLLOWAY, Chief Judge.

This suit for contribution and indemnification was filed in a Kansas state court by Gates Learjet Corporation (Gates) against Duncan Aviation (Duncan) arising from a crash of a jet aircraft in North Carolina, in which all five occupants perished. The suit was removed by Duncan to the federal district court. The aircraft was designed, manufactured and sold by Gates. Duncan serviced and maintained the aircraft prior to the crash on September 8, 1977. Before this case was filed, two other liability lawsuits arising from the same aircraft crash had been tried and concluded: one in Georgia and the other in Michigan. Additionally, the hull insurer of the aircraft, Federal Insurance Company, filed a subrogation action against Gates after paying the insured value of the aircraft to the deceased owner's estate.[1]

On behalf of one of the decedents, a wrongful death action was filed in the United States District Court for the Northern District of Georgia. Both Gates and Duncan were named as defendants; however, Duncan was dismissed for lack of jurisdiction. The case proceeded to trial on the theory of design defect and breach of implied warranty. The trial resulted in a judgment against Gates, which was appealed. Subsequently, Gates dismissed its appeal pursuant to a settlement agreement with the plaintiff.

Wrongful death actions on behalf of all five decedents were filed in the Circuit Court of the County of Wayne, Michigan, against several defendants, including Gates and Duncan. The plaintiffs' theory against Gates was similar to that in Georgia; one, there was a design defect in that the tailcone area of the aircraft was without a fire detection and extinguisher system, and two, breach of warranty. The Michigan plaintiffs' theory against Duncan was that it negligently maintained and inspected the aircraft. The five actions were consolidated for a jury trial on the issue of liability.

Prior to the beginning of the trial, Duncan filed a crossclaim against Gates, denying any negligence and any causation between its conduct and the in-flight fire. In addition, Duncan asserted in its cross-claim that if Duncan was held liable for negligent maintenance, it was due to Gates' faulty service manuals; thus, it was entitled to indemnification from Gates. Gates failed to respond to or answer Duncan's cross-claim.

At the close of plaintiffs' evidence, Duncan moved for a directed verdict against the plaintiffs. The trial court reserved its ruling on the motion until the close of all evidence. After all the evidence was submitted, and before the case was submitted to the jury, the trial court granted Duncan's motion for a directed verdict.

The Michigan jury returned a liability verdict against Gates, finding that negli-

1. *Federal Insurance Company v. Gates Learjet Corp.*, 823 F.2d 383 (10th Cir.1987).

gence and breaches of express and implied warranties were a proximate cause of the decedents' deaths. Ultimately, all the wrongful death claims were settled by Gates, three prior to the damage trials, and the other two while appeals were pending in the Michigan Court of Appeals.

In the present action, Gates claims a right of contribution and indemnification from Duncan, due to its negligence in maintenance, for amounts paid by Gates pursuant to the prior Michigan State Court judgments and settlements arising from the 1977 plane crash. Duncan thereafter moved for summary judgment on the basis that Gates is collaterally and equitably estopped from litigating the issue of Duncan's negligence. The district court, applying Michigan law, sustained Duncan's motion for summary judgment, holding that Gates is barred from relitigating the issue of Duncan's negligence on the basis of equitable estoppel and Michigan procedural law. Gates appeals that ruling. We affirm.

### I.

A. Michigan law of estoppel governs the estoppel effect of the prior Michigan court judgment

■ The district court, in granting Duncan's motion for summary judgment, correctly relied on Michigan law in deciding whether Gates was estopped from asserting its present contribution and indemnification claims. The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires that a federal court apply the law of the state which rendered the judgment for purposes of determining its preclusive effect. *Marrese v. American Academy of Orthopedic Surgeons*, 470 U.S. 373, 380–381, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466 n. 6, 481–482, 102 S.Ct. 1883, 1889 n. 6, 1897–98, 72 L.Ed.2d 262 (1982); *Jarrett v. Gramling*, 841 F.2d 354, 356 (10th Cir.1988); *Federal Ins. Co. v. Gates*, 823 F.2d 383, 385 (10th Cir.1987). Dun-

can's argument that the district court could have given the Michigan judgments greater preclusive effect than would the court of Michigan without offending the Full Faith and Credit Statute is unpersuasive. *See, Haring v. Prosise*, 462 U.S. 306, 313 & n. 6, 103 S.Ct. 2368, 2373 & n. 6, 76 L.Ed.2d 595 (1983); and *Union & Planters' Bank v. Memphis*, 189 U.S. 71, 75, 23 S.Ct. 604, 606, 47 L.Ed. 712 (1903). The district court properly applied Michigan law in determining whether principles of estoppel could be used to preclude the present litigation by Gates concerning Duncan's liability.

B. Traditional Collateral Estoppel is not available to Duncan under Michigan law

Gates argues vigorously that the district court's ruling is in conflict with settled Michigan law and general principles on collateral estoppel, privity and mutuality.

■ We agree that under Michigan law, Duncan can not use the traditional doctrine of collateral estoppel to prevent Gates from litigating the issue of liability, as Michigan adheres to recognized limitations on collateral estoppel. These include actual litigation and determination of an issue leading to judgment. *Howell v. Vito's Trucking and Excavating Company*, 386 Mich. 37, 191 N.W.2d 313, 315 (1971); *Rinaldi v. Rinaldi*, 122 Mich.App. 391, 333 N.W.2d 61, 64–65 (1983). Also, the same issue underlying the original action must be involved in the subsequent action. *Stolaruk Corp. v. Dept. of State Highways and Transportation*, 114 Mich. App. 357, 319 N.W.2d 581 (1982). Moreover, Michigan requires that mutuality of estoppel exist. *Rinaldi, supra*, 333 N.W. 2d at 65. Mutuality of estoppel is present if both parties in the second suit are bound by the judgment rendered in the first suit. *Stolaruk Corp., supra*, 319 N.W.2d at 583; *Howell, supra*, 191 N.W.2d at 315. Finally, one defendant is not bound by issues litigated between a plaintiff and another defendant, as long as no adversity exists between the defendants and no claim between them was brought in issue, litigated and determined. *Gomber v. Dutch Maid*

*Dairy Farms, Inc.,* 42 Mich.App. 505, 202 N.W.2d 566, 570 (1972), *lv. denied,* 389 Mich. 752 (1972); *Cook v. Kendrick,* 16 Mich.App. 48, 167 N.W.2d 483, 485 (1969).

Although Duncan is able to establish that in the first action the directed verdict entered in its favor constituted a final determination of nonliabilty between it and the plaintiffs, *see Latimer v. William Mueller & Son, Inc.,* 149 Mich.App. 620, 386 N.W.2d 618, 627 (1986), it is unable to show that Gates was an adverse party as to Duncan in the proceedings between Duncan and the plaintiffs, nor that the judgment Duncan obtained from the directed verdict is binding on any party other than it and the plaintiffs.

Duncan contends that an adversary relationship existed between it and Gates which arose solely from the action between Duncan and the plaintiffs. Duncan argues first that Gates was adverse because the plaintiffs' claims against Duncan were put in issue by plaintiffs' pleadings and Duncan's answer denying negligence; thus, the directed verdict determination is final as to all parties for purposes of Duncan's nonliability. Secondly, Duncan asserts that its cross-claim itself against Gates satisfies the requirement that the parties be adverse. Both of Duncan's contentions are flawed; the former in that Duncan cannot establish that Gates was an adverse party due to the plaintiffs' allegation of negligence on the part of Duncan, and the latter because there was no final determination between Gates and Duncan on Duncan's cross-claim.

For adversity to exist between Duncan and Gates, they must by the pleadings be arrayed on opposite sides. *Gomber, supra,* 202 N.W.2d at 570. Duncan argues that this requirement is met because Gates, as well as the plaintiffs, had a full opportunity to litigate the issue of Duncan's negligence. However, the mere assertion by Duncan that some other party was responsible for the crash is not sufficient to align that party as an adversary for collateral estoppel purposes. *See Cook v. Kendrick, supra,* 167 N.W.2d at 486 (mere assertions by one defendant that another defendant is

at fault does not make the co-defendants adversaries). Thus, Duncan cannot assert the defense of collateral estoppel on the basis of the judgment on the directed verdict because no adversity existed between it and Gates merely from the plaintiffs' pleadings and Duncan's denial of negligence.

Next, Duncan argues that its cross-claim against Gates was sufficient to create adversity between the parties. *See Gomber, supra,* 282 N.W.2d at 570. However, adversity between the parties is not adequate in and of itself for collateral estoppel purposes. In addition to the requirement of adversity, both parties must actually litigate the issue in question. In the Michigan proceeding, there was no final determination on Duncan's cross-claim. Gates had not responded to the cross-claim. And in fact, Duncan's Michigan counsel stated that the cross-claim became moot upon the trial court's granting its motion for a directed verdict. I R. 56; II R. 426. Therefore, because no final determination was made concerning the cross-claim, the district court was correct in holding that collateral estoppel was inapplicable. *See Sahn v. Estate of Brisson,* 43 Mich.App. 666, 204 N.W.2d 692, 694 (1973) (issue not litigated until controverted by pleadings, submitted to trier of fact for determination, and thereafter determined).

## II.

A. Gates was not procedurally required to assert cross-claim against Duncan in the Michigan state court action

◼ The district court, relying on Michigan comparative fault principles and *Sahn v. Brisson, supra,* 204 N.W.2d 692, held that Gates was estopped from relitigating the respective faults between itself and Duncan concerning the same issues and subject matter previously litigated in the Michigan state court proceeding. However, we feel that the district court was in error in relying on *Sahn* for the proposition that Gates' failure to bring a cross-claim in the original action estopped it from pursuing that claim in a subsequent action. Ad-

ditionally, the district court erred by holding that under Michigan comparative fault principles, Gates should have filed a cross-claim against Duncan for contribution and indemnity in the Michigan state action.

In *Sahn, supra,* the court held that the issue presented in the second action had already been raised and determined between the same parties in the prior action. *Id.* at 694. The party in *Sahn* was barred from proceeding in the second action not because of any procedural concept or comparative fault principles, but because all the requirements of collateral estoppel were fulfilled. The district court's reliance on the statement in *Sahn* that "the time for presenting a counterclaim is not always within a defendant's option," *id.,* is misplaced in light of the facts in the instant case. The court in *Sahn* was merely making a statement that if in the prior litigation all elements of collateral estoppel have been satisfied, there are no further issues to be decided in the subsequent action. Because the requirements for traditional collateral estoppel are missing, the holding based on *Sahn* that Gates was required to assert its cross-claims against Duncan is untenable.

Additionally, because cross-claims are permissive in Michigan, *see Michigan General Court Rule* (GCR) 203.3,[2] it was error for the district court, relying on Michigan's comparative fault principles, to hold that Gates was required by them and *Sahn* to assert its cross-claim and litigate the defense of Duncan's negligence in the Michigan action. There is no authority in Michigan which supports the district court's ruling based upon comparative fault principles that if a co-defendant wants to diminish its share of liability, it must present its cross-claim for contribution and indemnification in the initial action. In fact, under Michigan case law, if a party does not rely upon

his claim as a defense to the first action, he is not barred from later maintaining his action for affirmative relief in a subsequent suit. *Ternes Steel Co. v. Ladney,* 364 Mich. 614, 111 N.W.2d 859, 861 (1961). Although Michigan adopted comparative fault in negligence actions, *Placek v. City of Sterling Heights,* 405 Mich. 638, 275 N.W.2d 511 (1979), the case did not directly, or by implication, require a defendant to cross-claim against a co-defendant for purposes of litigating comparative fault.

**B. Gates is equitably estopped under Michigan law from litigating Duncan's alleged negligence**

■ The district court, relying on *Johnson v. Bundy,* 129 Mich.App. 393, 342 N.W.2d 567 (1983), held that Gates was equitably estopped from litigating the issue whether Duncan was negligent in its maintenance and service of the crashed aircraft because Gates failed to present this theory during the Michigan action.

In *Johnson v. Bundy,* the plaintiff (Johnson) was a subcontractor who filed a negligence action against a general contractor (Bundy) and the homeowner (Hammond), alleging that both were negligent in maintaining a dangerous condition, failing to provide sufficient lighting, and failing to warn of a dangerous condition. *Id.* 342 N.W.2d at 568. Hammond filed a motion for summary judgment asserting that "he could not be liable for plaintiff's injuries, since [Bundy] had total control over the premises and the construction contract." *Id.* Bundy, although having a full opportunity to oppose Hammond's motion for summary judgment, failed to answer or argue against the motion. *Id.* at 572. The trial court ultimately granted Hammond's motion for summary judgment which had the effect of absolving him on all of Johnson's

**2.** *Michigan General Court Rule* (GCR) 203.3 provides:

3. Cross–Claim Against Co–Party. A pleading may state as a cross-claim any claim by 1 party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any prop-

erty that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

In 1985 this rule was amended, *see Michigan Court Rule,* 2.203(D).

claims that were asserted against both defendants. *Id.* at 569.[3]

Bundy then filed a third-party complaint against Hammond for indemnification or contribution, alleging that he maintained control over the area in which Johnson sustained his injuries. *Id.* Thereafter, Hammond filed a motion for summary judgment, claiming that Bundy did not state a cause of action for indemnification or contribution. *Id.* at 570. Hammond's motion was granted on the grounds that: (1) as a matter of law, Bundy was not entitled to assert any claim for indemnification because Johnson's allegations against him were for active negligence; and, (2) the previous partial summary judgment granted in Hammond's favor adjudicated the issue of Hammond's active negligence, precluding Bundy from seeking contribution from Hammond. The court said the question was whether the earlier pretrial summary judgment for Hammond and against the plaintiff Johnson "operate[d] in the nature of an equitable estoppel on the issue of Hammond's alleged active negligence in Bundy's third-party complaint ..." *Id.* at 571. The Michigan Court of Appeals reasoned that:

> Defendant Bundy had notice of defendant Hammond's motion for summary judgment versus plaintiff and had full opportunity to file pleadings and to be heard. But defendant Bundy neither filed an answer to nor argued against defendant Hammond's motion for summary judgment against plaintiff. *When a party so fails, we do not permit that party to wait, to do nothing, and then later, by filing a third-party complaint, to in effect relitigate the issue of the alleged negligence of the homeowner.* In ruling on the motion for summary judgment brought by defendant Hammond against plaintiff, the trial court found that defendant Hammond was not negligent. Thus, because (1) defendant Bundy was a party in this case at the time of the filing and hearing on defendant Hammond's motion for summary

judgment against plaintiff, (2) defendant Bundy filed no pleadings, (3) defendant Bundy was a party and was involved in the appeal to this Court from the grant of summary judgment in favor of Hammond against plaintiff, and (4) the same issue of Hammond's negligence was presented there as is presented on this appeal from dismissal of defendant Bundy's third-party action for contribution, we decline to upset the trial court's ruling.

Consequently, we affirm the trial court's award of summary judgment to Hammond on Bundy's third-party complaint for contribution. The prior partial summary judgment granted to Hammond against plaintiff is conclusive as to the third-party contribution claim. *As a codefendant, Bundy had every opportunity to present his position and to be heard. We are unwilling to reward his failure by reversing and requiring the trial judge to again hear and decide an issue that is no different.* Further, the trial court's grant of summary judgment on the indemnification count is affirmed.

*Id.* at 572–73 (Emphasis added). On the basis of an equitable estoppel, the prior conduct of the co-defendant Bundy was held to bar the negligence claim asserted in the third party complaint for contribution.

We note that Duncan's Michigan counsel stated, when Duncan's motion for a directed verdict was presented, that Gates' had no standing to be heard or to oppose Duncan's motion, and that Gates' attorney took a similar position. II R. pp. 419 & 426. However, in light of the fact that Gates never contended or presented any evidence to show that Duncan was negligent in its maintenance of the aircraft in any way, Gates cannot now claim it was prejudiced by relying on Duncan's Michigan counsel's statement. Any reliance on the statement does not justify disregarding the holding in *Johnson.*

We hold that the district court correctly applied the *Johnson* case to the facts here,

---

**3.** Johnson's appeal from the granting of Hammond's motion for summary judgment was affirmed by the Court of Appeals, on December 10,

1982, and leave to appeal was denied by the Michigan Supreme Court on May 17, 1984.

and affirm the ruling that Gates is equitably estopped from litigating the fault, if any, of Duncan with respect to the aircraft crash previously tried in Michigan.[4] Like the situation in *Johnson*, Gates was a party in the Michigan action at the time of the trial on the wrongful death claims against both Gates and Duncan. Gates had not developed any theory that Duncan was negligent in response to Duncan's cross-claim against Gates and had not responded to the cross-claim.[5] When Duncan's motion for a directed verdict on plaintiffs' negligence claim was considered and granted, there had been no evidence of Duncan's negligence asserted by Gates, as is attempted now in the instant suit.

Gates' efforts to distinguish *Johnson v. Bundy* are unpersuasive. Gates mainly argues, as it must, that the opinion relied on by the district court "for its equitable estoppel ruling is contrary to controlling Michigan statutory and judicial authority." Brief of Plaintiff-Appellant Gates Learjet Corporation at 7. The opinion may not accord with traditional collateral estoppel and privity decisions, but as one resting on a separate principle of equitable estoppel, we are not persuaded to reject the case. Under its rationale we uphold the ruling that Gates was equitably estopped to assert its claim of Duncan's negligence. *See, e.g., McLellan v. Columbus I-70 West Auto-Truckstop*, 525 F.Supp. 1233, 1235 (N.D.Ill.1981) (failure of one defendant to oppose co-defendant's motion for summary judgment barred re-litigation of issue decided by summary judgment; it was too late for defendant to argue that its decision not to contest co-defendant's motion "should be viewed as non-adversarial or in fairness [be] disregarded.").

AFFIRMED.

**4.** Gates argues that *Johnson, supra,* is contrary to Michigan state law and has not been cited with approval since its opinion was issued. Regardless of Gates' contention, we must follow the *Johnson* case even though it was decided by an intermediate court. Gates has not provided any convincing evidence the Michigan Supreme Court would decide differently. *See Fidelity Trust Co. v. Field,* 311 U.S. 169, 177–178, 61 S.Ct. 176, 177–179, 85 L.Ed. 109 (1940); *Clay v. Sun River Mining Co.,* 302 F.2d 599, 602 (10th Cir. 1962).

**5.** Gates asserts it was not required to answer the cross-claim because the allegations of the cross-claim were never placed in issue and no evidence was presented in support or in opposition to the negligence issue asserted in the cross-claim. Appellant's Brief, pp. 4–5. Additionally, Gates claims that since the cross-claim was subsequently rendered moot and Duncan's Michigan counsel stated that Gates had no incentive to litigate any issue against Duncan, it should not be estopped from proceeding in the instant action.

Gates relies upon *Ternes Steel Company v. Ladney,* 364 Mich. 614, 111 N.W.2d 859 (1971) for the proposition that a failure to assert a defense to the first action does not preclude asserting a claim for affirmative relief based on matters of the defense in a second action. *Id.* 111 N.W.2d at 861. However, a distinction exists between a situation where a party fails to assert a defense in one action and then files a subsequent action alleging the same matters of his defense, *id.,* and a situation like the case here where Gates failed to respond to Duncan's motion and failed to present any evidence of Duncan's negligence. IV R. 19; II R. 419; *cf. Beulah Missionary Baptist Church v. Spann,* 132 Mich.App. 118, 346 N.W.2d 911, 914 (1984) (a party can be estopped from challenging consequences by his own inaction).