1 F.3d 1249
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Robert J. DEBRY and Joan Debry, Plaintiffs-Appellants,
v.
Wallace R. NOBLE, Robert Van Wagoner, Delbert Swenson, Rick
Warner, and Salt Lake County, Defendants-Appellees,
and
Dale Thurgood and Del K. Bartel, Defendants.
Robert J. DEBRY and Joan Debry, Plaintiffs-Appellees,
v.
Wallace R. NOBLE, Robert Van Wagoner, Delbert Swenson, Rick
Warner, and Salt Lake County, Defendants,
and
Dale Thurgood and Del K. Bartel, Defendants-Appellants.
 Nos. 91-4212, 91-4215.
 United States Court of Appeals, Tenth Circuit.
 Aug. 3, 1993.
 
 Before EBEL, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and KELLY, Circuit Judge.
 ORDER AND JUDGMENT*
 EBEL, Circuit Judge.
 
 
 1
 In these two related appeals, the plaintiffs-appellants, Robert and Joan Debry, challenge the district court's dismissal of their Sec. 1983 claims on summary judgment while the defendants-appellants, Dale Thurgood and Del Bartel, challenge the district court's partial denial of their request for pro se attorney's fees and costs. We affirm.
 
 FACTS
 
 2
 In 1985, Thurgood and Bartel, doing business as Cascade Enterprises and Cascade Construction, constructed a building in Salt Lake City, Utah (the "Building"). On May 30, 1985, Thurgood and Bartel sold the Building to Robert and Joan Debry, by means of an Earnest Money Sales Agreement. Apparently, as a precondition to closing on the Sales Agreement, the Debrys required Thurgood and Bartel to obtain a certificate of occupancy.[1]
 
 
 3
 On December 6, 1985, four days prior to the scheduled closing date, Thurgood and Bartel received a temporary certificate of occupancy from defendant-appellee Wallace Noble, a Salt Lake County building inspector. Noble was the supervisor in charge of the other Salt Lake County building inspectors, defendants-appellees Robert Van Wagoner, Delbert Swenson, and Rick Warner. It is undisputed that the temporary certificate of occupancy was issued to Thurgood and Bartel in violation of the policies and procedures of the Salt Lake County Works Department.
 
 
 4
 On December 10 and 13, 1985, the closing on the Building took place even though Thurgood and Bartel had not yet completed the Building and had only obtained a temporary certificate of occupancy. At the closing, the Debrys executed in favor of Thurgood and Bartel a Promissory Note in the amount of $62,500 and a Trust Deed to the property as security for the Note. Pursuant to an Escrow and Non-Merger Agreement signed by the parties, the Trust Deed and Promissory Note were placed in escrow until such time as Thurgood and Bartel completed work on the Building.
 
 
 5
 On January 24, 1986, after Thurgood and Bartel failed to finish the Building to the Debrys' satisfaction, the Debrys filed suit against Thurgood and Bartel in state court, alleging fraud, breach of contract, breach of implied warranties, and negligence. Approximately four months later, on May 13, 1986, the Debrys filed a Notice of Claim with Salt Lake County, objecting to Noble's issuance of the temporary certificate of occupancy to Thurgood and Bartel and the failure of other building inspectors to issue any stop work orders.[2] On September 19th, the Debrys amended their state court complaint to add Noble, Salt Lake County, and the Salt Lake County Works Department as defendants (the "First County Defendants"). The amended complaint alleged that these defendants acted negligently in enforcing the Building Code and committed fraud in issuing the temporary certificate of occupancy to Thurgood and Bartel.
 
 
 6
 On November 3, 1986, Carl Eriksson, the Section Manager for the Inspection Services Section of Salt Lake County, ordered the Debrys to vacate the Building since their temporary certificate of occupancy had expired and a permanent certificate of occupancy had not been obtained. The Debrys subsequently amended their state court complaint to add claims against Salt Lake County that the Notice to Vacate violated their First Amendment right to freedom of enterprise and occupation, their Fifth Amendment right not to be deprived of property without due process, and their Fourteenth Amendment right to equal protection.
 
 
 7
 After completion of discovery, the First County Defendants moved for summary judgment. On August 11, 1987, the trial court granted this motion. The Debrys appealed the trial court's judgment and their appeal was pending before the Utah Supreme Court at the time this appeal was argued. In a separate order, the trial court required the County to inspect the Building and compile a list of deficiencies that needed to be corrected in order for the Debrys to receive a certificate of occupancy.
 
 
 8
 The Debrys' claims against Thurgood and Bartel were tried to a jury. The jury found that Thurgood and Bartel breached an implied warranty to construct the building in accordance with the Building Code and awarded the Debrys $52,625.00 in compensatory damages. However, the jury also found that the Debrys were in default under the terms of the Trust Deed and Promissory Note and awarded Thurgood and Bartel $62,500 in compensatory damages and $125,000 in punitive damages.
 
 
 9
 On November 9, 1988, the County performed the inspection required by the state court, and concluded that there were several violations of the Building Code that needed to be repaired in order for the Debrys to receive a certificate of occupancy. The Debrys subsequently requested a temporary certificate of occupancy, apparently without remedying any of the violations noted by the County. After the Debrys' request was denied by the County, the Debrys filed the instant suit in the United States District Court for the District of Utah on January 24, 1989. In their complaint, the Debrys charged the defendants with fraud in connection with the temporary certificate of occupancy issued to Thurgood and Bartel in 1985. Additionally, the Debrys alleged pursuant to 42 U.S.C. Sec. 1983 that the defendants violated their First Amendment right to petition for redress and their Fifth Amendment right not to be deprived of property without due process by ordering them to vacate the Building in 1986 and by subsequently refusing to issue a temporary certificate of occupancy.
 
 
 10
 The defendants moved for summary judgment on the grounds of claim preclusion and issue preclusion and requested sanctions against the plaintiffs. In an order dated September 5, 1990, the district court granted the motion of Salt Lake County, Noble, Van Wagoner, Swenson, and Warner (the "Second County Defendants") for summary judgment on the ground that "all of plaintiffs' claims were or could have been raised in their prior state court action." The district court initially stayed Thurgood and Bartel's request for summary judgment pending the outcome of certain post-trial motions in the state proceeding, but subsequently granted summary judgment to these defendants as well. The district court denied each of the defendants' request for sanctions. Following the district court's grant of summary judgment, Thurgood and Bartel, who appeared pro se, petitioned the court for $7,975 in attorney's fees and $1,390.02 in costs.[3] The district court denied Thurgood and Bartel's request for fees but granted them $138.60 in costs for copying expenses.[4]
 
 
 11
 The Debrys and Thurgood and Bartel now appeal to this court. The Debrys argue that the district court erroneously relied on the doctrine of claim preclusion to dismiss their Sec. 1983 claims against the Second County Defendants. Thurgood and Bartel challenge the district court's refusal to award them attorney's fees and more than $138.60 in costs.
 
 DISCUSSION
 I. The Debrys' Sec. 1983 Claims
 
 12
 The district court granted summary judgment to the Second County Defendants on the Debrys' Sec. 1983 claims on the ground that these claims were barred under state law principles of claim preclusion. The court found that all of the Debrys' Sec. 1983 claims were claims that the Debrys raised or could have raised in their prior state court action, and thus litigation of these claims in federal court was precluded under Utah law. The Debrys argue that the district court's reliance on state law principles of claim preclusion was erroneous because they did not have a full and fair opportunity to litigate their constitutional claims in the state proceeding.[5]
 
 
 13
 We review the grant of summary judgment de novo. Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). The court applies the same legal standard used by the district court under Federal Rule of Civil Procedure 56(c). Id. Rule 56(c) permits summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In analyzing whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party. Deepwater Invs. Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 14
 It is well-settled that the federal courts must give a state court judgment the same preclusive effect that the judgment would receive from the courts of the state in which the judgment was rendered. See 28 U.S.C. Sec. 1738; Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Kremer v. Chemical Construction Corp., 456 U.S. 461, 467 (1982); Gates Learjet Corp. v. Duncan Aviation, 851 F.2d 303, 305 (10th Cir.1988); Heinhold Hog Market v. McCoy, 817 F.2d 81, 82 (10th Cir.1987); Kiowa Tribe v. Lewis, 777 F.2d 587, 590 (10th Cir.1985), cert. denied, 479 U.S. 872 (1986). This principle applies to actions brought under 42 U.S.C. Sec. 1983. See Migra v. Warren City Sch. Dist., 465 U.S. 75 (1984); Allen v. McCurry, 449 U.S. 90, 96 (1980); Vance v. Utah, 744 F.2d 750, 752 (10th Cir.1984). It is equally well settled, however, that federal courts need not apply state law rules of preclusion where the plaintiff was denied a full and fair opportunity to present his or her claims in the state proceeding. See McCurry, 449 U.S. at 101; Haring v. Prosise, 462 U.S. 306, 313 (1982); Vance, 744 F.2d at 752; Davis v. United States Steel Supply, Inc., 688 F.2d 166, 176 (3rd Cir.1982), cert. denied, 460 U.S. 1064 (1983). In such a situation, the federal courts are free to determine the claims in the federal proceeding. Kremer, 456 U.S. at 481. Accordingly, whether the district court properly relied on state law principles of claim preclusion in the instant case depends on whether the Debrys were afforded a full and fair opportunity to present their constitutional claims in the prior state court proceeding.
 
 
 15
 A plaintiff is denied a full and fair opportunity to litigate a claim or issue in a state proceeding where the proceeding fails to "satisfy the minimum procedural requirements of the Fourteenth Amendment Due Process clause." Kremer, 456 U.S. at 481; accord Butler v. City of North Little Rock, 980 F.2d 501, 503 (8th Cir.1992). In the instant case, there is no evidence that the Debrys were denied due process in the prior state proceeding. The record demonstrates that the Debrys were permitted to plead constitutional claims under 42 U.S.C. Sec. 1983, to brief these claims in response to the First County Defendants' motion for summary judgment, and to argue these claims before the court. Furthermore, the record belies the Debrys' assertion that the court dismissed their Sec. 1983 claims on a ground not argued by either party, namely that there was no proof of any constitutional deprivations. In their motion for summary judgment in the state court proceeding, the First County Defendants devoted an entire section of their pleadings to this very argument. Accordingly, the Debrys had both notice of, and opportunity to address, this argument prior to the state court's decision. We conclude on the basis of the record that the state proceedings complied with the requirements of the due process clause. See Vance, 744 F.2d at 752-53 (upholding the validity of a prior state proceeding where the plaintiff had a full opportunity to plead and argue issues before the state tribunal).
 
 
 16
 In McCurry, the Supreme Court suggested that an additional basis might exist in Sec. 1983 actions for concluding that a plaintiff has been denied a full and fair opportunity to litigate his or her claims even where the state proceeding satisfied due process. The Court stated that an exception to state preclusion rules might be appropriate "where a state court failed to even acknowledge the existence of the constitutional principle on which a litigant based his claim." 449 U.S. at 101. The Debrys argue that such a result occurred in the instant case, because the state court erroneously held that its Sec. 1983 claims were barred by the Utah Governmental Immunity Statute.[6] However, it is clear from the court's decision that it dismissed the Debrys' Sec. 1983 claims, inter alia, because the Debrys failed to prove the existence of any constitutional violations. The court said, "The Court further finds that the plaintiffs have not been deprived of their First, Fifth and Fourteenth Amendment rights under the United States Constitution by virtue of Salt Lake County's having issued a Notice and Order to Vacate the plaintiffs' premises."[7] The court's discussion of the preclusive effect of the Utah Immunity Statute occurred in a separate paragraph in connection with its analysis of the Debrys' negligence claims.[8] There is simply no basis, therefore, for finding that the state court was indifferent to the Debrys' Sec. 1983 claims within the meaning of McCurry.
 
 
 17
 We conclude that the Debrys were afforded a full and fair opportunity to litigate their Sec. 1983 claims in the prior state proceeding, and therefore, that the district court properly invoked Utah principles of preclusion. Since the Debrys do not argue that the district court misapplied these principles, we affirm the district court's grant of summary judgment in favor of the Second County Defendants.
 
 
 18
 II. Thurgood and Bartel's Claim for Attorney's Fees and
 
 Costs
 
 19
 Following the district court's grant of summary judgment in favor of Thurgood and Bartel, a decision that the Debrys do not appeal, Thurgood and Bartel petitioned for pro se attorney's fees and costs. The district court denied Thurgood and Bartel's request for fees and concluded that they were entitled to only $138.60 in costs. Thurgood and Bartel contend on appeal that the district court erred both by denying any attorney's fees for the time they spent preparing their case and by refusing to reimburse them for more than $138.60 in costs and expenses. We will consider each contention in turn. A district court's award of fees and costs is reviewed for an abuse of discretion, although the legal analysis that provides the basis for the court's decision is reviewable de novo. Aguinaga v. United Food and Commercial Workers International Union, No. 92-3211, 1993 U.S.App. LEXIS 11478, at 3 (10th Cir. May 19, 1993); Anthony v. United States, 987 F.2d 670, 674 (10th Cir.1993).[9]
 
 A. Attorney's Fees
 
 20
 The traditional rule in American courts is that litigants must pay their own attorney's fees. Aleyska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 257 (1975). An exception to this rule exists, however, where payment of attorney's fees is provided for either by statute or contract, or where the losing party has acted in bad faith. Id. at 257, 258-59. In the instant case, Thurgood and Bartel argue that they have both a statutory right to attorney's fees under 42 U.S.C. Sec. 1988(b) and a contractual right to attorney's fees under the Trust Deed executed by the Debrys. Additionally, they argue that they are entitled to attorney's fees because the Debrys' suit was filed in bad faith.
 
 
 21
 Section 1988(b) permits a court, in its discretion, to award attorney's fees to the prevailing party in an action under Sec. 1983. See 42 U.S.C. Sec. 1988(b).[10] However, in Kay v. Ehrler, 111 S.Ct. 1435 (1991), the Supreme Court held that pro se litigants, whether or not they are members of the bar, are not entitled to attorney's fees under Sec. 1988. See also Turman v. Tuttle, 711 F.2d 148 (10th Cir.1983) (denying attorney's fees under Sec. 1988 to pro se litigants who are not members of the bar). The Court reasoned that the term attorney's fees assumes the existence of a paying relationship between an attorney and a client, and that restricting awards to litigants engaged in such a relationship would encourage litigants to hire independent counsel and thereby increase the quality of litigation. See 111 S.Ct. at 1436-38. In light of Kay, it is clear that Thurgood and Bartel are not entitled to receive attorney's fees under Sec. 1988.
 
 
 22
 Similarly, we conclude that Thurgood and Bartel are not entitled to receive attorney's fees under the doctrine permitting an award of fees where the losing party has acted in bad faith. Consistent with the Supreme Court's decision in Kay, we conclude that the right to recover attorney's fees under the bad faith doctrine does not extend to pro se litigants. The primary purpose of awarding attorney's fees where the losing party has acted in bad faith is to alleviate the opposing party from the legal expenses incurred in defending against a groundless suit. Gordon v. Heimann, 715 F.2d 531, 539 (11th Cir.1983); Nemeroff v. Abelson, 704 F.2d 652, 654 (2d Cir.1983); cf. Turman, 711 F.2d at 149 (concluding that a pro se litigant is not entitled to attorney's fees under Sec. 1988 because the purpose of this provision is to compensate litigants for the costs of bringing suit).[11] In the instant case, Thurgood and Bartel represented themselves and thus did not expend any money for legal representation. Accordingly, we find no justification for awarding Thurgood and Bartel attorney's fees under the bad faith doctrine.
 
 
 23
 Finally, we conclude that Thurgood and Bartel are not entitled to receive attorney's fees under the Trust Deed. Under Utah law, the Trust Deed, like any contract, must be interpreted in accordance with its plain meaning, absent any attendant ambiguity. See Plateau Mining Co. v. Utah Division of State Lands and Forestry, 802 P.2d 720, 725 (Utah 1990). Paragraphs Four, Six, and Sixteen of the Deed provide that the Debrys are liable to Thurgood and Bartel for costs and expenses, including attorney's fees.[12] However, the Debrys' liability under these provisions is expressly limited to those proceedings affecting the title of the property, the security of the Trust Deed, or Thurgood and Bartel's rights and powers as beneficiaries under the Trust Deed and Promissory Note. The instant action does not fall within any of these categories. The Debrys' complaint did not seek to invalidate either the Trust Deed or Promissory Note or their obligations under these instruments. Rather, it merely sought damages against Thurgood and Bartel for fraudulently and unconstitutionally conspiring with Noble to obtain a temporary certificate of occupancy. Under the plain and unambiguous terms of the Trust Deed, therefore, the instant action clearly falls outside the scope of Thurgood and Bartel's right to receive attorney's fees under this instrument. Furthermore, as noted above, Thurgood and Bartel did not, in fact, incur any attorney's fees nor did they "employ counsel."
 
 B. Costs
 
 24
 Federal Rule of Civil Procedure 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court directs otherwise." The costs that a court may award under Rule 54(d), however, are limited to those which are specified either by statute or by contract. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 445 (1987); Miller v. Cudahy Co., 858 F.2d 1449, 1461 (10th Cir.1988), cert. denied, 492 U.S. 926 (1989). In the instant case, the district court, adopting the clerk of court's decision, concluded that statutory authorization existed under 28 U.S.C. Sec. 1920 for awarding Thurgood and Bartel $138.60 for copying costs, but that there was no statutory basis for awarding any of the other costs requested by these defendants.[13]
 
 
 25
 We agree with the district court that no statutory authority exists for taxing the remaining costs requested by Thurgood and Bartel, and the defendants do not quarrel with this conclusion. Rather, they assert that they are entitled to reimbursement for their remaining costs on the basis of the Trust Deed. Once again, however, Thurgood and Bartel rely on Paragraphs Four, Six, and Sixteen of the Trust Deed in support of their argument. For the same reason we hold that the Trust Deed does not entitle them to attorney's fees in the instant action, we conclude that this instrument does not support their request for costs and expenses. Accordingly, we affirm the district court's refusal to award Thurgood and Bartel more than $138.60 in costs.[14]
 
 
 26
 The district court's judgment is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The Salt Lake County Uniform Building Code requires a certificate of occupancy before any building may be occupied. See Uniform Building Code Sec. 307(a). A certificate of occupancy may be issued only after a County building inspector determines that a building complies with the requirements of the Building Code. See id. Sec. 307(c). A temporary certificate of occupancy may be issued prior to the completion of a building if a building official finds that no substantial hazard will result from occupancy of the building. See id. Sec. 307(d)
 
 
 [2]
 Utah's Governmental Immunity Statute requires a party to file a Notice of Claim with a governmental entity before maintaining an action against the entity. See Utah Code Ann. Sec. 63-30-11
 
 
 [3]
 Thurgood and Bartel's requested costs consisted of secretarial fees, postage and mailing, copying costs, and research expenses
 
 
 [4]
 After the Debrys filed the instant action in federal court, they commenced a second state court action against Salt Lake County and Noble alleging negligence and breach of contract. The action was subsequently dismissed on the ground of claim preclusion and sanctions were levied against the Debrys. The Debrys appealed the dismissal of their claims and the imposition of sanctions and the appeal is currently pending
 
 
 [5]
 On appeal, the Debrys also contend that the district court's decision was erroneous because the state court judgment is not final and their complaint is based on new facts which occurred after the state court judgment was rendered. Since these claims were not raised below, however, we decline to consider them on appeal. See Farmers Insurance Co. v. Hubbard, 689 F.2d 565, 570 (10th Cir.1989); Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1282 (10th Cir.1988)
 
 
 [6]
 Under the Utah Governmental Immunity Statute, immunity from suit is waived for all governmental entities for negligent acts or omissions. See Utah Code Ann. Sec. 63-30-10. Certain acts, such as those involving the exercise of discretion, are specifically exempted from this statutory waiver of immunity. See id
 
 
 [7]
 Indeed, the Debrys acknowledge as much in their preceding due process argument, where they contend that the district court unfairly dismissed their Sec. 1983 claims on the ground that no constitutional deprivations occurred
 
 
 [8]
 The court did rule upon the constitutionality of the Utah Governmental Immunity Statute in the same paragraph as its discussion of the Debrys' Sec. 1983 claims
 
 
 [9]
 The Debrys contend that we are without jurisdiction to consider Thurgood and Bartel's claims because they failed to appeal the clerk's assessment of costs to the district court within the five-day period established by Federal Rule of Civil Procedure 54(d). We disagree. Although Bartel and Thurgood did not appeal the clerk's assessment within the required time frame, the Debrys did timely appeal the clerk's assessment of costs. As a result of the Debrys' appeal, the district court had occasion to review fully Thurgood and Bartel's claims. Given this plenary review by the district court, we conclude that we may properly consider Thurgood and Bartel's claims on appeal
 
 
 [10]
 Section 1988(b) provides:
 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of costs.
 
 
 [11]
 We recognize that awarding attorney's fees where a losing party has acted in bad faith can also serve the purpose of deterring vexatious and frivolous suits. Cf. Christianburg Garment Co. v. EEOC, 434 U.S. 412, 420 (1978) (justifying award of attorney's fees under Sec. 1988 to prevailing defendants where plaintiff's suit is unreasonable or frivolous, in part, on the ground that such awards "will deter the bringing of lawsuits without foundation") (quotations omitted). However, we believe the goal of deterrence is of secondary importance in justifying the award of attorney's fees under the bad faith doctrine since this goal can equally be achieved by the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure
 
 
 [12]
 Paragraph Four provides:
 [To protect the security of this trust deed trustor agrees] to appear in and defend any action or proceeding purporting to affect the security hereof, the title to said property, or the rights or powers of Beneficiary or Trustee, and should Beneficiary or Trustee elect to also appear in or defend any such action or proceeding, to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum incurred by Beneficiary or Trustee.
 Paragraph Six provides:
 [To protect the security of this trust deed trustor agrees] should Trustor fail to make any payment or to do any act herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: Make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights of [sic] powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, incur any liability, expend whatever amounts in its absolute discretion it may deem necessary therefor, including cost of evidence of title, employ counsel, and pay his reasonable fees.
 Paragraph Sixteen provides:
 [It is mutually agreed that] upon occurrence of any default hereunder, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Trust Deed in the manner provided by law for the foreclosure of mortgages on real property and Beneficiary shall be entitled to recover in such proceeding all costs and expenses incident thereto, including a reasonable attorney's fee in such amount as shall be fixed by the court.
 
 
 [13]
 Section 1920 provides:
 A judge or clerk of any court or the United States may tax as costs the following:
 (1) Fees of the clerk and marshal;
 (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 (3) Fees and disbursements for printing and witnesses;
 (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
 (5) Docket fees under section 1923 of this title;
 (6) Compensation of court appointed experts, compensation of interpreters and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
 A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
 
 
 [14]
 We find the Debrys' request for attorney's and sanctions to be without merit and it is therefore denied. We dismiss the Debrys' motion to strike portions of Thurgood and Bartel's brief as moot